## BLAKE v. BRAMA.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—JOINT ENTERPRISE.
   Whether or not plaintiff's decedent and defendant's decedent
   were engaged in a joint enterprise while on a hunting trip
   when accident in which both were killed is not determined,
   where such question was neither raised nor briefed on appeal.

2. SAME—DIRECTED VERDICT—EVIDENCE.
   Plaintiff's proofs must be viewed in the light most favorable to
   her in passing on the propriety of an order granting de-
   fendant's motion for a directed verdict.

3. AUTOMOBILES—SPEED—OVERTAKING ANOTHER CAR—SIGNAL—LEFT
   TURN—INTERSECTION—QUESTION FOR JURY—EVIDENCE.
   Evidence offered by plaintiff presented questions of fact as to
   whether or not her decedent or defendant's decedent was
   driving car at sundown while on hunting trip through Nebraska
   and as to whether or not it was being driven at an excessive
   speed when the driver passed at the left of another car at
   an intersection and apparently failed to observe or heed the
   arm signal of its driver of an intention to make a left turn;
   hence, it was error for trial court to grant defendant's motion
   for directed verdict.

4. SAME—GUEST PASSENGER—NEBRASKA—GROSS NEGLIGENCE.
   Proof of gross negligence is necessary to establish liability of
   the operator of a motor vehicle for damages to a guest pas-
   senger under Nebraska statute (3 Neb Rev Stat 1943, § 39-
   740).

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 246.
[2] 3 Am Jur, Appeal and Error § 945.
[3] 53 Am Jur, Trial § 347 *et seq*.
[4] 5 Am Jur, Automobiles § 231.
[4] Automobiles: Liability of owner or operator for injury to guest.
    20 ALR 1014, 26 ALR 1425, 40 ALR 1338, 47 ALR 327, 51
    ALR 581, 61 ALR 1252, 65 ALR 952.

Appeal from Wayne; Miller (Guy A.), J. Submitted June 14, 1955. (Docket No. 12, Calendar No. 46,268.) Decided October 3, 1955.

Case by Anna Belle Blake, administratrix of estate of Wayne Earl Blake, deceased, against Abramo Brama, administrator of the estate of Ludwig Brama, deceased, for damages arising from death in automobile accident. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Hutson & Merritt* and *Cary & BeGole,* for plaintiff.

*Moll, Desenberg, Purdy & Glover,* for defendant.

BOYLES, J. Plaintiff, administratrix with will annexed of the estate of Wayne Earl Blake, deceased, brought this suit in the circuit court for Wayne county against the defendant as administrator of the estate of Ludwig Brama, deceased, to recover damages for the death of Blake caused by an automobile collision, which occurred in Nebraska. The case was tried in Wayne county by jury and at the conclusion of the plaintiff's proofs the trial judge granted a motion of the defendant for a directed verdict of no cause for action. Judgment for the defendant was entered accordingly, from which plaintiff appeals.

Defendant's motion was planted on 3 grounds—that the plaintiff had not introduced sufficient proof to go to the jury (1) as to who was driving the defendant's automobile at the time of the accident or (2) to show gross negligence under the Nebraska guest statute; and (3) even if it was shown that the defendant's decedent was driving the car, plaintiff's decedent had assumed the risk of excessive speed.

The court charged the jury that there was sufficient proof to submit plaintiff's proofs to the jury as to the first and second questions raised, as issues of fact, but directed a verdict for the defendant on the third ground that under the Nebraska law the plaintiff's decedent had assumed the risk of the manner in which the defendant's decedent was driving the car when the accident occurred. The court also said, "at least they were engaged in a joint enterprise," but that question is not raised or briefed here on the appeal. Of course the plaintiff-appellant agrees here with the trial judge in holding with the plaintiff on the first 2 questions raised on the motion—that there was sufficient proof to go to the jury as to who was driving the car, and as to gross negligence of the defendant's decedent. But plaintiff-appellant disagrees with the trial court's holding that plaintiff's decedent, as a matter of law, had assumed the risk of the defendant's decedent having been grossly negligent in driving at an excessive rate of speed when trying to pass to the left of another automobile on the highway.

The defendant-appellee argues here that even if the trial court gave a wrong reason by directing a verdict for the defendant on the third question raised in the motion, nonetheless the directed verdict for the defendant should stand, on either 1 or both of the other 2 grounds urged by the defendant for a directed verdict.

Necessarily, decision here must depend on the facts adduced by the plaintiff, and the Nebraska law to be applied. For the purposes of decision on the motion for a directed verdict, plaintiff's proofs must be viewed in the light most favorable to the plaintiff. On or about September 8, 1950, the 2 decedents, Blake and Brama, left Michigan in the automobile of the defendant's decedent, Brama, on a hunting trip to Wyoming. They were to take

turns driving. There was testimony tending to show that when they arrived at a point about a mile west of Cody, Nebraska, on US–20, defendant's decedent was driving. However, this is a question of fact now disputed by the defendant. The claim of the plaintiff that the car was being driven at a very high rate of speed, claimed to have been 85 miles per hour, is also now disputed. Plaintiff's proofs show that the defendant's decedent driver attempted to go to the left of another car traveling in the same direction approximately 15 miles per hour, the driver of which had signaled intention to make a left turn into a connecting highway. Mr. Wobig, the driver of the slower car, a Ford pickup truck, testified:

"I was going up the highway and I looked back and seen this car coming a considerable distance, 3 or 4 hundred yards to the rear; I had a short distance to travel before it would be reasonable to signal; just a short distance, 150 feet or so, then I started my signal for a left-hand turn, straight out, like that (witness demonstrated arm signal); as I approached the turn I was moving up toward the center of the road, I started to turn past the center of the road and I kind of took a half look to see how close this car would be—it was up to the back end of my pickup—within about 3 feet of the back end of my pickup, clear over to the extreme left side of the highway, going around me; I tried to stop, and this car, the car from Michigan, kind of swayed over and caught my bumper and the fender on my pickup and then it kept going; it went across the intersection and 1 wheel went over the edge of the highway; went up the shoulder of the highway for—oh —250 feet; then it was pulled back to the center of the highway where it turned over about 3 times; there was so much dust I couldn't just exactly see it all. * * *

"*Q.* And to your best judgment, about how far were you from the place where you would turn south across the highway when you first saw this car coming from the east?

"*A.* Well, it was quite a ways back down the road when I first saw it; I looked back before I got anywheres near the turn off,—oh—I would say it was 300 or 400 yards possibly more, back.

"*Q.* Then after you saw it that far back about how far did you travel before you started to turn to the left?

"*A.* Well, I moved up a short distance; otherwise it would be too long a signal; I didn't think that was necessary; so I moved up; possibly 150 feet before I started my signal, then I signalled for a city block, or better than 300 feet.

"*Q.* Then you turned off to the left?

"*A.* Yes, from where I was to turn.

"*Q.* Then about how far, when you did signal that you were going to turn to the left, about how far back of you was this car that later turned over?

"*A.* Well, I took a second look; it was almost up to my pickup; it was over on the left side and going around me already, when I went to take the second look.

"*Q.* Were you able to form an opinion, by that time, from and after when you first saw this car, as to the speed that this car was travelling?

"*A.* About 85 miles an hour."

He testified further that he was not able to see or identify the man who was driving the Michigan car; that the smaller man (Brama) was found about 30 feet closer than the other man to the turned-over car; also, that the time of the accident was near sundown, but that he could still see for quite a distance and that the headlights of both cars were lighted. There was no other traffic in sight. Mrs. Wobig, his wife, who was with him in the front seat of the pickup with their children, also testified (without

objection) that in her opinion the Michigan car, from the speed which she had looked back and observed its approach, was at least 80 miles per hour. There was further testimony for the plaintiff from the owner of a filling station where the 2 decedents had stopped, about 38 miles before they reached the place of the accident. He testified that "the big fellow" (Blake) was driving the car when they came in, that they visited for 15 or 20 minutes, and that "the little fellow" (Brama) was driving when they left. This was "around 5:30 or a quarter to 6." They, the 2 decedents, talked about how long it had taken them to drive from Michigan. Arguing from that testimony, and assuming that they had been driving continuously since leaving home, and had come by the most direct route, about 1,200 miles, appellee claims that they had averaged more than 57 miles per hour. But there is no testimony to show whether the 2 men had driven continuously, nor whether, when, or for how long, they may have stopped en route. Granting whatever probative value may be allowed this testimony, and as to whether the "little fellow" (Brama) was still driving, perhaps less than an hour after leaving the filling station, the appellant argues that both were issues of fact which should have been submitted to the jury. In that connection, appellant also points to other testimony as to the physical facts, from a highway patrolman for the State called to the scene of the accident—the skid marks, distance traveled, the position of the wrecked car, location of debris, and his opinion as to the speed, from 70 to 85 miles per hour. He testified that the "large man" lived 30 to 40 minutes after the accident, without regaining consciousness.

At the close of plaintiff's proofs, the trial court granted the defendant's motion for a directed verdict of no cause for action. Consequently there was no

opportunity or occasion for the defendant to offer any testimony. We conclude that the court erred in granting the motion. There was testimony, undisputed, to raise a question of fact as to who was driving the car at the time of the accident, that it was being driven at an excessive rate of speed, that the driver passed another car on the left at an intersection and apparently failed to observe or heed a signal of its driver of an intention to make a left turn. The Nebraska statute, like that in this State, requires proof of gross negligence to establish liability of the operator of a motor vehicle for damages to a guest passenger.

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle." 3 Neb Rev Stat 1943, § 39–740.

Gross negligence, under the Nebraska law, has been well defined in many decisions by the supreme court of that State. See *Morris* v. *Erskine* (1933), 124 Neb 754 (248 NW 96); *Swengil* v. *Martin* (1933), 125 Neb 745 (252 NW 207); *Thompson* v. *Edler* (1940), 138 Neb 179 (292 NW 236); *Gummere* v. *Mudd* (1941), 139 Neb 370 (297 NW 622); *Landrum* v. *Roddy* (1943), 143 Neb 934 (12 NW2d 82, 149 ALR 1041); *Sautter* v. *Poss* (1951), 155 Neb 62 (50 NW2d 547); *Lusk* v. *County of York* (1954), 158 Neb 662 (64 NW2d 338); *Ottersberg* v. *Holz* (1954), 159 Neb 239 (66 NW2d 571).

See, also, *Slayton* v. *Boesch* (1946), 315 Mich 1, and cases cited, deciding an automobile collision case tried here, which occurred in Nebraska.

Competent testimony for 'the plaintiff which, under the motion, must be taken in the light most favorable to the plaintiff, raised questions of fact, including the issue as to whether there was an absence of the requisite care by defendant's decedent when he attempted to pass the Ford pickup at the rate of speed shown by plaintiff's proofs, and under all of the circumstances shown. The trial court was in error in granting the defendant's motion for a directed verdict at the close of the plaintiff's proofs.

Reversed and remanded for new trial. Costs to appellant.

CARR, C. J., and BUTZEL, SMITH, SHARPE, REID, and KELLY, JJ., concurred with BOYLES, J.

DETHMERS, J., concurred in the result.