TRAGER v THOR

Docket No. 132240. Submitted July 8, 1992, at Detroit. Decided April
6, 1993, at 9:00 A.M. Leave to appeal sought.

Randy Trager, for himself and as next friend of Rachael Trager,
and Brenda Trager brought an action in the Oakland Circuit
Court against Thomas and Patricia Thor and Robert Thor,
seeking damages for injuries suffered by Rachael when she was
bitten by a dog allegedly owned by all three of the Thors while
she was on the property owned by Thomas and Patricia Thor.
Plaintiffs asserted three bases for recovery against Robert Thor,
father of Thomas, who was at his son's home supervising some
yard work and watching his grandchildren, who were playing
with Rachael: liability under the "dog-bite" statute, liability
under the common-law doctrine of strict liability of the owner
or keeper of a vicious animal, and liability arising out of
general negligence. Robert Thor moved for summary disposi-
tion, filing with the motion a supporting deposition denying
ownership of the dog and asserting that the dog-bite statute
applies only to owners and the common-law strict-liability
doctrine applies only to owners and keepers and he was neither
and that general negligence under these circumstances is not
recognized in Michigan. The trial court, Frederick C. Ziem, J.,
granted the motion, holding that the statute applies only to
owners of a dog, the common-law strict-liability doctrine re-
quires a showing of knowledge of vicious propensities of an
animal and that had not been done, and that any general
negligence claim would require that the defendant be a keeper
of the animal and that Robert Thor, as a visitor in the house,
was not a keeper of the dog. Plaintiffs appealed.

The Court of Appeals held:

1. The dog-bite statute clearly speaks only of the liability of
the owner of a dog. Although a previous dog-bite statute spoke

REFERENCES

Am Jur 2d, Animals §§ 86, 89, 92, 123.

Who "harbors" or "keeps" dog under animal liability statute. 64
ALR4th 963.

Modern status of rule of absolute or strict liability for dogbite. 51
ALR4th 446.

in terms of the liability of owners and keepers, the Legislature repealed that statute. The Legislature did not intend that the general definition of an owner found in the Dog Law of 1919, which includes any person who keeps a dog, apply to the present dog-bite statute, which was enacted in 1939. ·

2. The plaintiffs had the burden of establishing that there was a genuine issue of material fact with respect to Robert Thor's ownership of the dog once he had submitted the deposition in which he denied ownership. Because the plaintiffs submitted no such evidence, the trial court properly dismissed the claim under the dog-bite statute.

3. The common-law strict-liability action could be maintained against the owner or keeper of an animal of known vicious tendencies. A keeper of a dog is anyone other than the owner who has the care, custody, or management of the dog. There was at least a question of fact whether Robert Thor was a keeper of his son's dog. Further, there was a question of fact concerning whether Robert Thor knew that the dog had vicious tendencies. The trial court erred in dismissing the common-law strict-liability claim, in view of the disputed questions of fact concerning both Robert Thor's status as a keeper and his knowledge of the dog's dangerous propensities.

4. A cause of action exists against anyone who voluntarily assumes a duty to perform and then negligently fails to exercise reasonable care in the discharge of that duty. The facts pleaded in this case, when viewed in the light most favorable to the plaintiffs, show that Robert Thor agreed to supervise Rachael Trager and to supervise and control the dog. Because a jury could have found that he had failed to discharge those acts with ordinary care, it was error for the trial court to dismiss the negligence count.

Affirmed in part, reversed in part, and remanded.

1. ANIMALS — ACTIONS — DOGS — STATUTES — OWNERS.

The statute imposing absolute liability for dog-bite injuries under certain circumstances imposes that liability only on the owner of the dog; an action under the statute may not be maintained against one who is only a keeper of a dog (MCL 287.351; MSA 12.544).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — GENUINE ISSUE OF MATERIAL FACT.

A defense motion for summary disposition because of the absence of a genuine issue of material fact should be granted where the motion is accompanied by a deposition that specifically refutes a fact that is alleged by the plaintiff and that is necessary to

maintain the action and the plaintiff fails to meet that motion with evidence creating a genuine issue of fact with respect to the disputed issue (MCR 2.116[C][10]).

3. ANIMALS — ACTIONS — COMMON-LAW — KEEPER.

A person injured by an animal has an action at common law against the owner or keeper of the animal where the owner or keeper knew of the animal's vicious nature; a keeper is anyone other than the owner who undertakes to manage, control, or care for an animal.

4. ANIMALS — ACTIONS — NEGLIGENCE.

A person injured by an animal may bring an action against the owner or keeper of the animal for the failure to exercise ordinary care under the circumstances to control the animal even if the owner or keeper does not have any knowledge of the animal's vicious nature.

*Paul D. Sherr, P.C.* (by *Paul D. Sherr*), for the plaintiffs.

*Collins, Einhorn & Farrell, P.C.* (by *Noreen L. Slank*), for the defendant.

Before: MURPHY, P.J., and SHEPHERD and T. S. EVELAND,* JJ.

PER CURIAM. Plaintiffs commenced this action for damages arising from injuries sustained when Rachael Trager was bitten by an English Sheepdog owned by defendants Thomas and Patricia Thor. In addition to suing these defendants, plaintiffs also sued Robert Thor, the father of Thomas. Robert Thor was present at his son's home to supervise certain yard work. Thomas and Patricia went out, leaving Robert Thor to watch his grandchildren and their playmate, Rachael Trager, who was six years old at the time of the incident. Plaintiffs' second amended complaint alleges that "Robert Thor was on the premises and was the person in whom the care and control of the En-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

glish Sheepdog was reposed." The complaint alleges that defendants are jointly and severally liable for Rachel's injuries under: (1) MCL 287.351; MSA 12.544, (2) the common law, and (3) a general claim of negligence. Plaintiffs appeal as of right from the trial court's grant of summary disposition in favor of defendant Robert Thor (hereinafter defendant). We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), contending, among other things: (1) the "dog-bite" statute applies only to owners of the dog; (2) a claim under the common law must fail against defendant because liability is imposed only on "owners or keepers," and defendant is neither; and (3) plaintiffs' "generalized negligence theories" are not recognized in Michigan (the written motion), or that liability is imposed only upon owners under a negligence theory (oral argument on motion).

The trial court granted defendant's motion, ruling from the bench:

> Well, as I have analyzed it, the dog bite statute has eliminated the keeper requirement and it has to be an owner.
> Well, clearly these people [sic, defendant] were not an owner of the dog. So I have no problem with that.
> The common law, there has to be a showing of the—does cover more than just the owner but there has to be a showing of the knowledge of the dog's vicious propensities under the common law statute [sic]. And that is not shown in this case at all.
> And then there has to be a breach of duty on the part of the keeper or the one in charge to apply the general negligence statute [sic].

And I think that the complaint, while good as to the owners of the dog, fails as to these visitors [sic, defendant] in the house even through they were related.

So I felt upon reading the motion that it would not be justified and that they [sic, defendant] be retained in the case. And I am going to grant the Plaintiff's motion in this—or the defendant's motion in this case as to the father.

And so I just feel that the case—[does not] stand up as against these people [sic] were just temporarily taking over the house and watching out for things while the children went to the market.

And so I am going to grant the motion.

# I

## INTRODUCTION

As will be discussed in greater detail in section III, *infra,* there has long existed a common-law cause of action for damages for injuries from attacks by domestic animals known by their owners or keepers to be vicious. *Nicholes v Lorenz,* 396 Mich 53, 59, n 3; 237 NW2d 468 (1976). The keeping of such an animal subjects the keeper to strict liability for damages arising from the vicious nature, i.e., liability without fault. See, e.g., *Papke v Tribbey,* 68 Mich App 130, 136; 242 NW2d 38 (1976).

Very early in this state's history, the Legislature enacted a statute intended to ameliorate the burden of proof required under the common law, particularly with respect to attacks by dogs, because "the evidence of [the dog's vicious] propensity would generally be in the knowledge mainly or exclusively of the owner himself, and it often occurred that his misconduct in failing to restrain a dog he knew to be vicious could not be shown."

*Elliot v Herz,* 29 Mich 202, 202-203 (1874). The first such "dog-bite statute" was apparently 1850 PA 161. See *Nicholes, supra,* p 58. The 1915 codification of that act provided that if a dog caused certain damages, including personal injuries, "the owner or keeper of such dog" shall be liable for double damages, "and it shall not be necessary, in order to sustain an action, to prove that the owner or keeper knew that such dog was accustomed to do such damage or mischief." 1915 CL 7270. The dog-bite statute did not extinguish or supersede the common-law action against keepers or owners of dogs known to be vicious. *Nicholes, supra,* p 59; *Wojewoda v Rybarczyk,* 246 Mich 641, 643; 225 NW 555 (1929).

By 1919 PA 339, our Legislature enacted the Dog Law of 1919, MCL 287.261 *et seq.;* MSA 12.511 *et seq.,* which, among other things, provides for the licensing of dogs, regulates the keeping of dogs, and provides a remedy for damage to livestock or poultry by dogs. The Dog Law specifically provides that nothing therein shall be construed as limiting the common-law liability of the owner of a dog for damages committed by it. MCL 287.288; MSA 12.539.

In 1929, the Legislature repealed 1915 CL 7270, the dog-bite statute then in existence. 1929 PA 309; *Grummel v Decker,* 294 Mich 71, 75; 292 NW2d 562 (1940). That dog-bite statute, as noted above, imposed liability upon a dog's "owner or keeper."

Thereafter, for the next ten years, persons bitten by dogs were apparently relegated to bringing claims under the common law, until, in 1939, the Legislature enacted another dog-bite statute. 1939 PA 73, MCL 287.351; MSA 12.544. This version differed substantially from 1915 CL 7270. Whereas the earlier version remedied the "killing, wound-

ing or worrying" of domestic animals as well as the "assault or bite" of a person, the 1939 version only prescribes a remedy when a dog "shall without provocation bite any person." Moreover, the double damages provision was not included. Finally, and most important for present purposes, while the earlier law expressly imposed liability for damages on a dog's "owner or keeper," the 1939 act contains no such reference to a dog's "keeper."

II

DOG-BITE STATUTE

Plaintiffs first argue that the trial court incorrectly interpreted the dog-bite statute, MCL 287.351; MSA 12.544, when the court granted summary disposition on the ground that defendant was not an owner. We disagree.

MCL 287.351(1); MSA 12.544(1) provides in pertinent part:

> If a dog bites a person, without provocation while the person is on public property, or lawfully on private property, including the property of the owner of the dog, *the owner of the dog* shall be liable for any damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness. [Emphasis added.]

Plaintiffs argue that the definition of "owner" found in the Dog Law of 1919 should be applied to the dog-bite statute. Section 1 of the Dog Law of 1919, MCL 287.261(2)(c); MSA 12.511(2)(1), defines an "owner" as follows:

> "Owner" when applied to the proprietorship of a dog, means every person having a right of prop-

erty in the dog, and every person who keeps or harbors the dog or has it in his care, and every person who permits the dog to remain on or about any premises occupied by him.

We reject plaintiffs' contention that the two statutes relate to the same subject and must therefore be read and construed together. It is a maxim of statutory construction that statutes in pari materia, i.e., those having a common purpose or relating to the same person or thing or class of persons or things should be read together as constituting one law. *Michigan Humane Society v Natural Resources Comm,* 158 Mich App 393, 401; 404 NW2d 757 (1987). However, for this rule of construction to apply, there must first be an ambiguity in the statute at issue. See *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992) (if the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted). See also *Kimes v Bechtold,* 176 W Va 182, 185; 342 SE2d 147 (1986) (rule only applies when statute ambiguous).

Furthermore, although the two statutes both relate to dogs, their purpose is not sufficiently common to invoke the rule of construction applicable where statutes are in pari materia. Cf. *Michigan Humane Society, supra,* p 405. We agree with our Supreme Court's assessment of the predecessor statutes, 1915 CL 7270 and 1915 CL 7274, in a different context: "Although they have some points of similarity, the acts cover different subjects." *Wojewoda, supra,* p 644.

Also, we cannot accept plaintiffs' argument that the Legislature contemplated that the definition of "owner" set forth in the Dog Law of 1919 would be applicable to the dog-bite statute enacted in 1939. In 1929, the Legislature expressly repealed 1915

CL 7270, which imposed liability upon owners and keepers of dogs. Ten years later, the Legislature enacted a dog-bite statute that by its terms applies only to a dog's owner. In construing an amendment to a statute, it is presumed that a change in phraseology implies that a change in meaning was also intended. *Lawrence Baking Co v Unemployment Compensation Comm,* 308 Mich 198, 205; 13 NW2d 260 (1944), cert den 323 US 738 (1944). This presumption is applicable in the present circumstances. *Greek v Bassett,* 112 Mich App 556, 562; 316 NW2d 489 (1982) (repeal of one statute and enactment of another covering the same subject area).

Finally, in a case presenting somewhat similar circumstances, this Court has interpreted the statute to apply only to a dog's owners. *Szkodzinski v Griffin,* 171 Mich App 711, 713-714; 431 NW2d 51 (1988) ("[b]ecause defendant was not the dog's owner, he cannot be held liable under Michigan's dog-bite statute").

Plaintiffs also contend that summary disposition of their claim under the dog-bite statute was error "for the reason that [d]efendant has proffered nothing beyond his self-serving statement denying ownership which must be tested by the triers of fact." Plaintiffs misunderstand the burden they bore in responding to defendant's motion under MCR 2.116(C)(10). Such a motion tests the factual support for a claim. *Szkodzinski, supra,* p 714. In their second amended complaint, plaintiffs alleged that defendant (as well as codefendants Thomas and Patricia Thor) owned the sheepdog. In his deposition, defendant testified that the dog belonged to his son and daughter-in-law. It is not disputed that the transcript of this deposition testimony was attached in support of defendant's motion in the trial court. Defendant argued below

that summary disposition was appropriate in light of his testimony that he was not the owner, because the dog-bite statute imposes liability only on owners.

A motion for summary disposition under subrule C(10) must identify specifically the issues that the moving party believes to involve no genuine issue of material fact, MCR 2.116(G)(4), and must be supported by the type of evidence required by MCR 2.116(G)(3). When such a motion is made and supported in accordance with the applicable provisions of MCR 2.116, the responding party may not rest upon the mere allegations or denials of the pleadings, but must meet the motion with evidence setting forth the specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4); *Hutchinson v Allegan Co Bd of Road Comm'rs (On Remand)*, 192 Mich App 472, 481; 481 NW2d 807 (1992).

Giving the benefit of reasonable doubt to the nonmovant, a court must determine whether a record might be developed that would leave open an issue upon which reasonable minds may differ. *Hutchinson, supra,* pp 480-481. Although this Court is liberal in finding a genuine issue of material fact, if the nonmovant fails to meet the burden of showing that a genuine issue of material fact exists, then judgment for the moving party shall be entered if appropriate. MCR 2.116(G)(4); *Prysak v R L Polk Co,* 193 Mich App 1, 6; 483 NW2d 629 (1992).

In this case, defendant properly made and supported his motion for summary disposition on the ground that there was no genuine issue of material fact regarding his lack of ownership of the dog. On appeal plaintiffs have pointed to no evidence submitted by them in response to defendant's motion that would support their claim that

defendant is an owner of the sheepdog, and our review of the lower court record discloses no such evidence submitted by plaintiffs. Accordingly, the trial court did not err in granting defendant's motion for summary disposition with respect to plaintiffs' claim under the dog-bite statute.

III

COMMON-LAW STRICT LIABILITY

At common law, owners, and certain other persons variously described as "keepers," "possessors," or "custodians," are liable for injuries caused by a domestic animal with violent propensities that are, or should be, known to the owner or other person. *Nicholas v Lorenz, supra,* p 59, n 3 (keeper); 3 Restatement Torts, 2d, § 509, p 15 (possessor); *Papke v Tribbey, supra,* p 136 (custodian); *Rickrode v Wistinghausen,* 128 Mich App 240, 245; 340 NW2d 83 (1983) (custodian; citing *Papke*).

This liability has been labeled "strict liability." *Rickrode, supra;* Anno: *Modern status of rule of absolute or strict liability for dogbite,* 51 ALR4th 446, § 2[a], p 451; Prosser, Torts (4th ed), § 76, pp 499, 501. Strict liability is most often characterized as liability without regard to fault or negligence. Prosser, § 75, p 495. Although some early opinions in our state speak in terms of "negligence," a careful reading of most of these opinions leaves no doubt that what was being applied was, effectively, "absolute or strict liability after a finding that the dog [or other domestic animal] owner has knowledge of the dog's dangerous propensities." 51 ALR 4th 451.

For example, in *Brooks v Taylor,* 65 Mich 208, 210-211; 31 NW 837 (1887), our Supreme Court explained:

The negligence of the owner of the bull is sufficiently set forth. . . .

\* \* \*

. . . The negligence consists in keeping such an animal after notice; and whoever keeps an animal accustomed to attack and injure mankind, with knowledge that it is so accustomed, is *prima facie* liable in an action on the case at the suit of any person attacked and injured by the animal, without any averment of negligence or default in the securing and taking care of it.

\* \* \*

. . . The gist of the action, according to all the authorities, is the keeping of the dangerous animal with knowledge; and the injury by such an animal is *prima facie* actionable, without reference to the conduct of plaintiff.

In this case, the trial court apparently disposed of the common-law claim on two grounds: (1) defendant's knowledge of the dog's vicious propensities was "not shown at all" and (2) the complaint does not "stand up as against [a person, such as defendant, who was] temporarily taking over the house and watching out for things while the children [defendants Thomas and Patricia Thor] went to the market." It is urged by plaintiffs that "summary disposition of [their] common law claim was inappropriate where defendant . . . has testified that he exercised dominion over the dog on the date of the incident . . . and . . . further testified that he had knowledge of the dog's violent propensities."

A common-law cause of action exists against the owner or keeper of a domestic animal for damages arising from injuries caused by the attack of the animal known by the owner or keeper to be vicious. *Nicholes, supra,* p 59, n 3; *Szkodzinski, supra,* p 714; *Rickrode, supra,* p 245; *Papke, supra,*

p 133. This liability is essentially strict liability: liability attaches once it is proven that the person was the owner or keeper and that the person knew of the animal's vicious propensity. *Id.,* p 136.

Defendant argues that he was merely a temporary custodian, caretaker, or baby-sitter, not a "keeper," and therefore is not subject to the common law's strict liability applicable to a keeper. We disagree. We see no distinction between a temporary custodian, caretaker, or baby-sitter of an animal and the animal's keeper. If defendant, the person supervising the home of the owners where the dog was kept, in the absence of the owners and at the request of the owners, was not the keeper of the dog, who then would be a keeper? Black's Law Dictionary (6th ed) defines "keeper" as follows:

> A custodian, manager, or superintendent; one who has the care, custody, or management of any thing or place; one who has or holds possession of anything.

Similarly, Black's Law Dictionary (6th ed) defines "keeper of dog" as follows, in pertinent part:

> A harborer of a dog. . . . Any person, other than owner, harboring or having in his possession any dog. . . . One who, either with or without owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do.

With these definitions in mind, there was at least a question of fact concerning whether defendant was a keeper of the dog. Moreover, this Court and our Supreme Court have used interchangeably the terms custodian and keeper when discussing a defendant's liability at common law for damages

arising from the attack of an animal. See, e.g., *Nicholes, supra,* p 59, n 3; *Szkodzinski, supra,* p 714; *Glave v Michigan Terminix Co,* 159 Mich App 537, 540, n 1; 407 NW2d 36 (1987); *Rickrode, supra,* p 245; *Papke, supra,* pp 133, 136. We therefore do not agree with the distinction drawn by the defendant between a keeper and a custodian. Therefore, we conclude that the question whether defendant was the keeper of the dog was for the jury.

Further, we hold that plaintiffs presented evidence that defendant acknowledged that he knew that the dog had bitten someone shortly before this incident, i.e., that defendant knew of the dog's dangerous propensities. Plaintiffs, therefore, were entitled to have the question of common-law strict liability submitted to the jury.

## IV

### NEGLIGENCE

Finally, plaintiffs argue that the trial court erred in dismissing their negligence claim against defendant. We agree. It appears from the trial judge's comments that he concluded that there was no "breach of duty on the part of the . . . one in charge." This was a question for the jury, not one to be disposed of summarily under MCR 2.116(C)(10). Cf. *Rickrode, supra* (reversing directed verdict for owner of cat). To the extent that the trial court's ruling encompassed a conclusion that only an owner or "keeper" (see § III, *supra*) may be held liable under a general negligence theory, a position taken by defendant on appeal, we also disagree. We hold that a person who undertakes to care for an animal—even temporarily—must discharge that undertaking with ordinary care under the circumstances.

A negligence action against an animal's custodian was recognized in *Papke* and *Rickrode*. The use of the word "custodian" by those panels is not subject to the same deficiency we found in the foregoing section of this opinion. The liability here is not strict, but rather is grounded in negligence. At the common law, as discussed above, strict liability attaches upon a showing that one knowingly kept a vicious animal that does harm. Put another way, the "negligence" consisted in keeping the vicious animal. *Brooks, supra,* pp 210-211. (To avoid confusion, we will continue to refer to that type of liability as strict liability.) Under a negligence theory (as distinct from a strict-liability theory), the basis of liability consists of the failure to restrain or control an animal properly—even one not known by the custodian to be vicious. *Papke, supra,* p 136. To make a prima facie case, plaintiffs must only show "that defendant failed to exercise ordinary care under the circumstances to control or restrain." *Rickrode, supra,* p 247.

There is no logical reason to limit negligence liability to owners or keepers of animals, and Michigan law does not support such a limitation. The case of *Barnum v Terpenning,* 75 Mich 557; 42 NW 967 (1889), is cited by the *Papke* Court. In *Barnum,* the complaint alleged that defendant was negligent in driving a bull, with cattle, through the street in a village. Although defendant hobbled the bull to some degree, the Supreme Court observed:

It was for the jury to say whether the driving of the bull, under the circumstances, was negligence. The defendants had knowledge of his wildness, and also of the nature of such an animal. They also had notice that it would be safer to lead him.

The fact that the bull had never gored or at-

tacked any one before did not prevent the recovery by the plaintiff for this injury, although it was a circumstance to be taken into consideration by the jury as bearing upon the question of defendants' negligence. [*Id.,* p 560.]

This appears to be an example of an early case grounded in negligence as opposed to strict liability. The plaintiff alleged that the manner in which the defendant handled the animal was negligent under the circumstances. Although the defendant in that case was in fact the owner, there is no reason to limit the liability to owners as opposed to other handlers, and the Supreme Court did not do so.

We note that in discussing the negligence claim, the *Rickrode* panel cited 3 Restatement Torts, 2d, § 518, p 30.[1] Although *Rickrode* holds that custodians may be liable, the Restatement speaks of "one who possesses or harbors." However, it is not clear that, with respect to this section, the drafters meant by "possess" any more than "to have in one's actual physical control" (one of the definitions in Black's, *supra*). For example, in comment k to that section of the Restatement, liability for turning a horse loose is discussed with no limitation with respect to who may be held liable.

Limiting negligence liability to owners or keepers of animals lacks a basis in logic. Consistent with *Barnum, Papke,* and *Rickrode,* Prosser & Keeton, Torts (4th ed) § 33, p 170, citing 2 Restatement Torts, 2d, § 290, p 47, states: "*Anyone* with

---

[1] Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,
(a) he intentionally causes the animal to do the harm, or
(b) he is negligent in failing to prevent the harm.

normal experience is required to have knowledge of the traits and habits of common animals, and of other human beings." (Emphasis added.) See also *Brown v Bolduc,* 29 Mass App 909, 910; 556 NE2d 1051 (1990) ("and persons who are neither owners nor keepers may conduct themselves negligently in relation to a dog so as to become liable for consequent injuries to others"). Further, in this case, defendant's knowledge of the sheepdog's propensities is a factor significant to the determination of the standard of conduct. 2 Restatement Torts, 2d, § 289, p 41; Cf. *Barnum, supra.*

Finally, we note that the imposition of a duty upon defendant to exercise due care in these circumstances is not unusual or necessarily unique to situations involving animals. "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977). One who volunteers to perform an act assumes "a duty to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task." *Terrell v LBJ Electronics,* 188 Mich App 717, 721; 470 NW2d 98 (1991). The evidence in this case, construed most favorably to plaintiffs, shows that defendant agreed to supervise Rachael Trager and to supervise and control the dog. A duty thus arose requiring defendant to perform these acts with ordinary care. The evidence below presented questions of fact for the jury to resolve. Defendant also argued that he owed no duty to Rachael because she was a trespasser at the time of the injury. We do not address that issue because the trial court granted summary disposition on the basis of the status of defendant, not of Rachel. Whether she was a trespasser is a question of fact,

and, furthermore, the extent of the defendant's liability to a trespasser would be the proper subject of a jury instruction inasmuch as Rachael's status as a trespasser is disputed.

The trial court erred in granting defendant summary disposition of the negligence claim.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.