TRAGER v THOR

Docket No. 96434. Argued March 9, 1994 (Calendar No. 12). Decided May 17, 1994.

Randy Trager, as next friend of Rachael Trager, a minor, and Randy and Brenda Trager, for themselves, brought an action in the Oakland Circuit Court against Thomas and Patricia Thor, owners of a dog that bit Rachael, and Robert Thor, who was temporarily supervising Thomas' and Patricia's home when the bite occurred, seeking damages for Rachael's injuries. The court, Frederick C. Ziem, J., granted summary disposition for Robert Thor. The Court of Appeals, MURPHY, P.J., and SHEPHERD and T. S. EVELAND, JJ., reversed in an opinion per curiam, allowing the plaintiffs' common-law strict liability and negligence claims (Docket No. 132240). Robert Thor appeals.

In a unanimous opinion by Justice BOYLE, the Supreme Court *held:*

The temporary caretaker of a domestic animal is not the animal's owner or keeper, as a matter of law, and thus not subject to common-law strict liability, but may be liable in negligence for injuries caused by the animal.

1. Strict liability attaches for harm done by a domestic animal where the possessor of the animal has scienter of the animal's abnormal dangerous propensities and harm results from a dangerous propensity that was known or should have been known. The burden of the loss under common-law strict liability is allocated on an equitable basis to the party who has introduced the potential danger into the community, and either knows of the animal's abnormal propensity or has had the animal long enough to be chargeable with notice of its dangerous habits.

2. Proprietary control akin to ownership must be present to deem a party a keeper and potentially liable. Ownership of the property where an animal resides is not dispositive of keeper status. A person may have sufficient control of a domestic animal cared for on its owner's property to be subject to

REFERENCES

Am Jur 2d, Animals § 92.
See ALR Index under Animals.

liability as a keeper. Temporary caretakers like the defendant in the present case, however, have no choice regarding whether the dangers an animal may present will be introduced into the community, nor have they agreed to assume responsibility for injuries it might inflict, and therefore, should not be held strictly liable because, in such circumstances, the equitable basis for allocation of the cost of injury is absent.

3. The possessor or harborer of a domestic animal with no scienter of a dangerous propensity may be liable for harm done by the animal if negligent in failing to prevent the harm. Such a cause of action also should be available where the defendant's possession is of such a temporary nature as to preclude strict liability as a keeper. Possessors of dogs, and some other domestic animals, generally have no duty to keep them under constant control. However, even persons in temporary possession of such animals have a duty to control them if they have knowledge of a dangerous propensity unique to the animals, or are aware that the animals are in such situations that a danger of foreseeable harm might arise.

4. In this case, viewed in the light most favorable to the plaintiffs, there are sufficient allegations from which a trier of fact could find Robert Thor negligent in fulfilling his duty of care in supervising the dog, thereby subjecting him to liability for the harm done if he failed to exercise ordinary care to prevent foreseeable harm and such failure proximately caused the injury. His knowledge that the dog had bitten a child before this incident might lead the trier of fact to find that he had a duty to and should have exercised greater control over the dog, questions that cannot be resolved in deciding a motion for summary disposition.

Affirmed in part, reversed in part, and remanded.

199 Mich App 223; 501 NW2d 251 (1993) affirmed in part and reversed in part.

ANIMALS — STRICT LIABILITY — NEGLIGENCE — TEMPORARY CARE-
TAKERS.

The temporary caretaker of a domestic animal is not the animal's owner or keeper, as a matter of law, and thus not subject to common-law strict liability, but may be liable in negligence for injuries caused by the animal.

*Paul D. Sherr, P.C.,* for the plaintiffs.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Noreen L. Slank*), for the defendants.

Amicus Curiae:

*Scott D. Sitner* for Animals, Inc.

BOYLE, J. Today we are asked to consider which theories of liability are appropriate for an action against one in temporary possession of a domestic animal that inflicts injuries while in such possession. The Court of Appeals allowed the plaintiffs' common-law strict liability and negligence claims against a temporary caretaker of a dog to survive the caretaker's motion for summary disposition. Because we hold that the temporary caretaker in this case did not possess the dog with the requisite proprietary control to be deemed the dog's owner or keeper, we reverse that portion of the Court of Appeals opinion allowing a common-law strict liability cause of action. However, a negligence cause of action may be maintained against a person in temporary possession of a domestic animal, as long as there is a genuine issue of fact regarding the requisite elements of such a claim. We therefore affirm the Court of Appeals decision to allow the plaintiff's action to go forward under this theory.

I

Most of the facts of this case are not in dispute. On May 1, 1988, Robert Thor went to the home of his son and daughter-in-law, Thomas and Patricia Thor. Robert Thor owned the property, which he rented to his son and his family, and had come to visit his grandchildren and supervise some grading in the backyard that afternoon. When Robert Thor arrived, two neighbor children, Rachael and Nicole Trager, were playing in the Thor's backyard with Thomas and Patricia Thor's children and the Thor's English sheepdog, Chadwick.

Shortly after his arrival, Robert Thor agreed to supervise the home while Thomas and Patricia Thor left to do some shopping. Before leaving, Thomas and Patricia placed Chadwick in the house. When the workman arrived to begin grading the backyard, Robert Thor put the dog in a bedroom and shut the door before going outside. This was done as a precaution against Chadwick escaping through the front door and running loose in the neighborhood. At this point there are disputed facts with regard to whether the Trager children were asked to go home or if Rachael Trager was given permission by Robert Thor to use the bathroom in the Thor residence. What is not disputed, however, is that Rachael Trager ended up in the Thor house, where she was bitten and scratched by Chadwick.

During discovery, Robert Thor indicated that he had knowledge of an incident before that in question where Chadwick had bitten a child. It was Mr. Thor's opinion that the dog had been antagonized and provoked in that instance.

Randy Trager, as next friend of Rachael, and Randy and Brenda Trager, Rachael's parents, individually, filed suit against Thomas and Patricia Thor and Robert Thor to hold them liable for the injuries inflicted by Chadwick.[1] The Court of Appeals having reversed the trial court's summary disposition of the claims against Robert Thor, the issues presented are whether the plaintiffs state a claim upon which the relief sought can be granted on a theory of strict liability or negligence.[2]

---

[1] This appeal addresses only the possible liability of Robert Thor. Plaintiffs alleged claims against Mr. Thor under (1) MCL 287.351; MSA 12.544, the Michigan dog bite statute, (2) a common-law strict liability theory, and (3) a general negligence theory. The trial court granted Robert Thor's motion for summary disposition, under MCR 2.116(C)(10), on each of the plaintiffs' claims.

[2] The Court of Appeals affirmed the trial court's summary disposi-

II

There has long existed at common law a cause of action against possessors of certain domestic animals[3] for harm caused by those animals, regardless of fault. This common-law theory of strict liability[4] is accurately stated in 3 Restatement Torts, 2d, § 509, p 15, as follows:

> (1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.
> (2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know.

Strict liability attaches for harm done by a domestic animal where three elements are present: (1) one is the possessor of the animal, (2) one has scienter of the animal's abnormal dangerous propensities, and (3) the harm results from the dangerous propensity that was known or should have been known. It is the first of these elements that is at issue in the present case.

tion regarding the dog bite statute, but reversed the trial court and allowed the plaintiffs to go forward with their strict liability and negligence claims. 199 Mich App 223; 501 NW2d 251 (1993). We granted the defendant's motion for leave to appeal. 444 Mich 903 (1993).

Plaintiffs did not cross appeal the summary disposition of their claim against Robert Thor under the statute. We therefore limit our review to their claims under common-law strict liability and negligence.

[3] A dog that serves as a family pet clearly falls within the definition of a domestic animal, i.e., one "devoted to the service of mankind at the time and in the place in which it is kept." 3 Restatement Torts, 2d, § 506(2), p 10.

[4] We use the term "strict liability" here to encompass the Restatement view and our own common-law theory of liability for injuries suffered without assessment of fault.

A "possessor" of a domestic animal has been interpreted to encompass an "owner" or "keeper." *Knowles v Mulder,* 74 Mich 202; 41 NW 896 (1889); *Kennett v Engle,* 105 Mich 693; 63 NW 1009 (1895). However, plaintiffs do not here claim that Robert Thor is Chadwick's owner, and that characterization clearly cannot be drawn simply from the status of temporary caretaker.[5] Thus the focus of the present inquiry regarding strict liability is whether the temporary caretaker of a domestic animal can be considered a "keeper" as a matter of law.

In defining the term "keeper," it is instructive to examine the rationale for imposing strict liability for harm done by domestic animals. Liability is not imposed because of a failure to restrain the animal, since the utmost care in that regard is not a defense to liability. *Knowles, supra,* p 206. Therefore, negligence analysis in this instance, even regarding the keeping of an abnormally dangerous animal, is improper. The burden of the loss under the common-law rule is instead allocated on an equitable basis to the party who has introduced the potential danger into the community, and either knows of the animal's abnormal propensity or has had the animal long enough to be chargeable with notice of its dangerous habits. 3 Harper, James & Gray, Torts (2d ed), § 14.11, p 269; Prosser & Keeton, Torts (5th ed), § 76, pp 541-543. The liable party is deemed to have chosen to expose those around him to the abnormal danger posed by the animal he chooses to keep and must, as a consequence, shoulder any costs resulting from that danger.

[5] Summary disposition of plaintiff's claim against Robert Thor on the basis of the dog bite statute was affirmed by the Court of Appeals because of the plaintiff's failure to provide any evidence that Robert Thor was Chadwick's owner. 199 Mich App 232-233.

In order for such allocation to be equitable, the liable party must have sufficient custody and sufficient control of the animal to assess whether a risk is presented by an abnormal propensity and to decide whether an animal should be brought into or remain in the community. It is this proprietary control, akin to ownership, that we hold must be present to deem a party a keeper, and potentially liable, under the common-law strict liability principle.

The thread of proprietary control can be found in Michigan cases that have assessed which parties were keepers under former dog bite statutes. While these statutes imposed liability on both owners and keepers without regard to whether the owner or keeper knew of the animal's propensities,[6] they provide useful guidance regarding the level of control necessary to impose the responsibilities of keeper status.

In *Burnham v Strother,* 66 Mich 519; 33 NW 410 (1887), the defendant, while acknowledging he was the owner of a dog, was held not to be its keeper because the dog had been enticed away from the defendant and kept by the plaintiff's father. *Id.,* p 520. The Court approved an instruction that liability for an injury inflicted by the dog was to be imposed on the basis of where the dog "really lived." *Id.,* p 521. The charge distinguished between visits by a dog and the situation in which the dog was living at the home of a person who had undertaken to control its actions.[7] The

---

[6] The statutes imposing liability for owners or keepers in the cases discussed below were versions of a statute originally enacted by 1850 PA 161. *Nicholes v Lorenz,* 396 Mich 53, 58; 237 NW2d 468 (1976). The current version of the statute limits liability to owners. MCL 287.351; MSA 12.544.

[7] The instructions stated, in pertinent part:

"Now, you are not to draw inferences that because a man

plaintiff's father had chosen to bring the animal to his property and expose the plaintiff to any danger the dog might pose. The father, therefore, became the keeper to whom the cost of the injury was to be fairly allocated.

Similarly, in *Wetzel v Bolster,* 169 Mich 43; 134 NW 1099 (1912), it was held to be proper to instruct the jury that the owner of a dog was not its keeper where the dog had been given to a third party to keep approximately six weeks before the plaintiff's injury. It was the third party who was the keeper of the dog in this case because he had brought the animal to his premises and exposed those in his community to potential injury.

Finally, in *Jenkinson v Coggins,* 123 Mich 7; 81 NW 974 (1900), the defendant was found to be the keeper of a dog owned by her son where the son and dog lived on property that was under the defendant's absolute control. This control of the premises where the dog lived was clear evidence that the defendant possessed a proprietary status akin to ownership necessary to be found a keeper.

We do not mean to suggest by our analysis that ownership of the property where the animal resides is dispositive in the determination of keeper status. A person may have sufficient control of a domestic animal that is cared for on the owner's property to be subject to liability as a keeper.[8]

---

allows a dog to stay all night at his house, or to come there from time to time occasionally, that he is the keeper of the dog. We all know the habits of these animals, and the habits of children, and it is not an infrequent occurrence for a dog to visit, as well as anybody else. But if the evidence in the case shows that this man Burnham treated this dog as living at his house, and undertook to control his actions, then he was the keeper of the dog . . . ." [*Id.,* p 521.]

[8] In *Gagnon v Frank,* 83 NH 122; 139 A 373 (1927), a house sitter who was expressly required to care for the premises owner's three dogs while the owner was abroad was found to have held the dogs in

Possession of an animal sufficient to be found a keeper, however, "cannot be fairly construed as anything short of the exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession." *Hancock v Finch,* 126 Conn 121, 123; 9 A2d 811 (1939) (interpreting "keeper" under a statutory definition encompassing an owner, harborer, or party in possession of any dog). Thus, in *McEvoy v Brown,* 17 Ill App 2d 470; 150 NE2d 652 (1958), a grandmother who had fed and watered a puppy brought to her house by her grandsons, whom the grandmother had agreed to watch for the afternoon, was held not to be the animal's keeper. The court affirmed that such a perfunctory act would not constitute keeping of the puppy, even though it was performed at the grandmother's home. It was the responsibility of watching the grandchildren, and not the puppy, to which the grandmother had agreed. As a result, the grandmother was not barred, under Illinois' dog bite statute, from recovery for injuries suffered in a fall caused by the puppy running between her legs.

We agree that the situation of Mr. Thor as a babysitter or temporary caretaker is most aptly characterized as akin to that of the grandmother in *McEvoy.* A babysitter does not "undert[ake] to control" the activities of an animal that may be present, in contrast to the father in *Burnham,* but rather agrees to supervise the home for a limited period of time. Temporary caretakers have no

such possession and control as to be the animals' keeper. The house sitter, who was bitten on the hand by one of the dogs, was thus barred from recovery under New Hampshire's dog bite statute, which limited relief to parties that neither owned nor kept the dog that injured them. The court rejected the notion that the house sitter was "merely a servant working on the premises where the owner of the dog harbored it." *Id.,* p 123.

choice regarding whether the dangers an animal may present will be introduced into the community, nor have they agreed to shoulder responsibility for injuries it might inflict. They should therefore not be held strictly liable because the equitable basis for allocation of the cost of injury is absent in these circumstances.

We conclude that the temporary supervisory responsibility of the defendant in the present case did not provide him with sufficient proprietary control to attain keeper status. There is evidence to indicate that Mr. Thor had agreed to temporarily watch the children and manage the home, including supervising the family pet. However, given that one in the position of temporary caretaker normally has no control over the ultimate question whether keeping the animal is worth the risk of exposing the community to any abnormal danger, it would be inequitable to subject him to the common-law strict liability claim.

III

The conclusion that there is no cause of action against a temporary caretaker of a domestic animal under a common-law strict liability theory does not preclude a negligence claim. 3 Harper, James & Gray, *supra,* § 14.11, pp 265-276; 3 Lee & Lindahl, Modern Tort Law (rev ed), § 37.06, p 326. The Restatement, § 518(b), subjects the possessor or harborer of a domestic animal with no scienter[9] of a dangerous propensity to "liability for harm done by the animal if, but only if, he is negligent in failing to prevent the harm." Other jurisdictions, citing the Restatement, have allowed negli-

---

[9] "Scienter" under the negligence claim is used in the same manner as under the strict liability theory, i.e., whether the party knew or should have known of a dangerous propensity.

gence actions to go forward in domestic animal injury cases. *Medlyn v Armstrong,* 49 Or App 829, 832; 621 P2d 81 (1980); *Arnold v Laird,* 94 Wash 2d 867, 871; 621 P2d 138 (1980).

Negligence actions in domestic animal injury cases have been recognized by the Court of Appeals, usually as an alternative theory of liability to a strict liability claim when scienter cannot be shown. *Rickrode v Wistinghausen,* 128 Mich App 240, 247-248; 340 NW2d 83 (1983); *Papke v Tribbey,* 68 Mich App 130, 135-136; 242 NW2d 38 (1976).[10] We agree, and can find no reason why such a cause of action should not also be available when the defendant's possession is of such a temporary nature that he cannot be held strictly liable as a keeper. The danger of misallocation of loss, as was presented by extending strict liability to the temporary caretaker, is not present. The factfinder is instead judging the action of the caretaker in light of the totality of the circumstances.

In assessing whether duty exists in a negligence action of this type, it is necessary to keep in mind the normal characteristics of the animal that caused the injury, as well as any abnormally dangerous characteristics of which the defendant has knowledge. It is the province of the court to determine if duty exists. *Buczkowski v McKay,* 441 Mich 96; 490 NW2d 330 (1992), Prosser & Keeton, *supra,* § 37, pp 235-238. Dogs, and some other domestic animals,[11] are generally regarded as so

---

[10] In *Barnum v Terpening,* 75 Mich 557; 42 NW 967 (1889), this Court held that it was proper to allow a jury to determine if the defendant was negligent in the manner in which he drove a bull along a public highway. The plaintiff in that case had been tossed over a bridge railing into a stream by the bull. The precise question for the jury was whether the defendant had been negligent in tying the bull's head to his foot rather than leading him along the highway by a ring in his nose.

[11] Other animals in this class include "cats, bees, pigeons and

unlikely to do substantial harm that their possessors have no duty to keep them under constant control.[12] Consequently, a mere failure to do so would not constitute breach of any duty of care. 3 Restatement Torts, 2d, § 518, comments g and j, pp 31, 32. However, if the possessor of such an animal, including one in temporary possession, has knowledge of some dangerous propensity unique to the particular animal, or is aware that the animal is in such a situation that a danger of foreseeable harm might arise, the possessor has a legally recognized duty to control the animal to an extent reasonable to guard against that foreseeable danger. *Id.,* comment k, pp 32-33. We therefore adopt the following rule from *Arnold, supra,* p 871, and hold that in a domestic animal injury case:

> [A] negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen.

Applying these principles to the instant case, viewed in a light most favorable to the plaintiffs, *Blake v Brama,* 343 Mich 27, 29; 72 NW2d 10

---

similar birds and also poultry, in a locality in which by custom they are permitted to run at large . . . ." 3 Restatement Torts, 2d, § 518, comment j, p 32.

[12] A duty to constantly control an animal may be imposed by statute, such as the obligation to properly hold a dog in leash. MCL 287.262; MSA 12.512. See also *Rickrode, supra,* p 247 (the violation of a city ordinance requiring cats to be kept confined or leashed is evidence of negligence). Because the injury here occurred in the owner's home, this obligation is not at issue in this case.

(1955), we find sufficient allegations from which a trier of fact could find Robert Thor negligent in fulfilling his duty of care in supervising Chadwick. The facts indicate that Robert Thor took temporary possession of Chadwick when he agreed to supervise the home while his son and daughter-in-law went shopping. As a result, Mr. Thor is subject to liability for harm done by Chadwick if he failed to exercise ordinary care to prevent any foreseeable harm, and such failure proximately caused the injury. The defendant would ordinarily be under no duty to constantly control Chadwick; however, plaintiffs have presented evidence that Robert Thor knew Chadwick had bitten a child before this incident. Such evidence may lead the trier of fact to find that Robert Thor had a duty and should have exercised greater control over Chadwick in order to satisfy his requisite standard of care. The factfinder, however, might also determine that putting Chadwick in the back bedroom fulfilled the defendant's duty, even if he had scienter, or that the earlier incident provided no notice of dangerous propensities, because Chadwick had been provoked. Such questions are for the trier of fact, and cannot be resolved on motion for summary disposition.[13]

IV

In sum, we hold that the temporary caretaker of a domestic animal is not the animal's owner or keeper, as a matter of law. We decline to extend the common-law strict liability claim to such a caretaker. However, one in temporary possession

---

[13] We note that the allegations discussed above are also sufficient to permit a trier of fact to find that Robert Thor accepted responsibility for the care of Rachael Trager while at the Thor home, and had been negligent in fulfilling that duty by allowing her to be exposed to an animal with known dangerous propensities.

of a domestic animal may be liable for injuries caused by the animal under a negligence claim.

We reverse the decision of the Court of Appeals allowing the claim for strict liability, affirm the decision allowing the negligence claim, and remand to the trial court for proceedings consistent with this opinion.

CAVANAGH, C.J., and LEVIN, BRICKLEY, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.