BRAUN v YORK PROPERTIES, INC

Docket Nos. 184796, 190771, 190956. Submitted December 10, 1997, at Detroit. Decided June 2, 1998, at 9:05 A.M.

Kathy, Thomas, Bryan P., and Nicholas J. Braun brought an action in the St. Clair Circuit Court against York Properties, Inc., and others, seeking damages as a result of Nicholas having been attacked and severely injured by a dog owned by Annette and Robert Holmes, the Brauns' next-door neighbors at a mobile-home park owned and managed by York Properties, Inc., and others. The Brauns settled their claims against the Holmeses, but proceeded to trial with respect to their claims against the owners and manager of the mobile-home park on the basis that those defendants were liable as the result of their failure to enforce the park's rules and regulations regarding dogs in the park. The court, Daniel J. Kelly, J., directed a verdict for the mobile-home park defendants with respect to the claims of Kathy, Thomas, and Bryan Braun, Nicholas' mother, father, and brother, respectively, and the jury returned a verdict in favor of Nicholas for past and future noneconomic damages and for future medical expenses. The court denied the various motions for posttrial relief made by the mobile-home park defendants, and subsequently denied their motion for mediation sanctions against Kathy, Thomas, and Bryan Braun. The mobile-home park defendants appealed both from the judgment on the jury verdict and from the denial of their motion for mediation sanctions. The appeals were consolidated.

The Court of Appeals *held*:

1. The adoption by the mobile-home park of rules and regulations relating to the size of a dog that could be kept by a tenant of the park did not create a duty of care on the part of the mobile-home park to protect its tenants from injury from dogs owned by other tenants. Although the restriction concerning the size of a dog that might be kept by a tenant might in some way protect other tenants from harm, the primary purpose of that regulation was to protect the premises. Because the size of a dog is not necessarily related to its propensity to bite, and because the mobile-home park defendants had no reason to know or suspect that the dog would attack a child, the failure to enforce the size regulation cannot be said to be a breach of duty of care owed by the mobile-home park

defendants to the injured child. Accordingly, the trial court erred in refusing to grant a directed verdict in favor of the mobile-home park defendants with respect to the claim of the injured child.

2. MCR 2.403(O)(8) provides that a motion for mediation sanctions must be filed within twenty-eight days "after the entry of judgment or entry of an order denying a timely motion for a new trial or to set aside the judgment." Judgment was entered for the defendants with respect to the claims of Kathy, Thomas, and Bryan Braun on February 1, 1995. Although the mobile-home park defendants filed timely motions for posttrial relief with respect to the judgment entered in favor of Nicholas Braun, no such motions for posttrial relief were filed with respect to the judgment that was entered in favor of the mobile-home park defendants with respect to the claims of Kathy, Thomas, and Bryan Braun. Accordingly, the defendants' April 6, 1995, motion for mediation sanctions against those plaintiffs was not timely, and the trial court properly denied the motion for sanctions as untimely.

Affirmed in part and vacated in part.

1. NEGLIGENCE — CONTRACTS.

A person who undertakes, gratuitously or for consideration, to render services to another that the person should recognize as necessary for the protection of a third person or that person's property is subject to liability to the third person for physical harm resulting from the failure to exercise reasonable care to protect the undertaking if the person's failure to exercise reasonable care increases the risk of such harm, the person has undertaken to perform a duty owed by the other to the third person, or the harm is suffered because of reliance of the other or the third person upon the undertaking.

2. COMMON LAW — RESTATEMENT — STATUTES.

The application of a common-law rule found in the Restatement of the Law to a particular set of facts does not turn upon whether those facts can be characterized in the language of the Restatement; unlike a statute, which expresses a legislative directive for the treatment of future cases, the Restatement seeks primarily to distill the teachings of decided cases and is descriptive.

3. COMMON LAW — RESTATEMENT.

The influence of the Restatement of the Law depends upon its persuasiveness, and even where a particular section of the Restatement has received specific judicial endorsements, cases where that section is invoked must be decided by reference to the policies and precedents underlying the rule restated; textual analysis of the Restatement is useful only to the extent that it illuminates these fundamental considerations.

*Bator Roualet & Berlin* (by *Nancy J. Roualet* and *Daniel A. Gwinn*), for the plaintiffs.

*Thomas D. Rinehart, P.C.* (by *Thomas D. Rinehart*) (*Gross, Nemeth & Silverman, P.L.C.*, by *James G. Gross, Mary T. Nemeth*, and *Steven G. Silverman*, of Counsel), for the defendants.

Before: SAWYER, P.J., and WAHLS and REILLY, JJ.

REILLY, J. In these consolidated cases, York Properties, Inc., the owners and manager of the mobile-home park at which the underlying events took place (hereinafter defendants) appeal as of right the judgment for plaintiff Nicholas Braun on his negligence claim and the order denying their motion for mediation sanctions against plaintiffs Kathy, Thomas, and Bryan Braun. We vacate the judgment in Docket No. 184796 because defendants did not owe plaintiff Nicholas Braun a duty of care. In Docket Nos. 190771 and 190956, however, we affirm the denial of mediation sanctions.

Plaintiff Nicholas Braun, a twelve-year-old child, was seriously injured when bitten by his neighbors' dog, a Labrador, while playing inside the neighbors' mobile home. Nicholas, along with his mother, father, and brother, commenced this action against his neighbors and defendants, for injuries arising out of the dog bite. Nicholas settled his claims against his neighbors for $100,000. The trial court granted a directed verdict with respect to the claims of plaintiffs Kathy, Thomas, and Bryan Braun. The jury, however, found for Nicholas with respect to his claim against defendants for negligently failing to enforce rules and regulations regarding dogs in the mobile-home park. The court entered judgment for Nicholas in the amount of

$50,000 for past noneconomic damages, $100,000 for future medical expenses, and $123,904.95 for future noneconomic damages. The trial court subsequently denied defendants' motions for judgment notwithstanding the verdict, a new trial, and remittitur. The court also denied defendants' motion for mediation sanctions against Kathy, Thomas, and Bryan Braun.

DOCKET NO. 184796

Defendants first argue that the trial court erred in denying their motion for a directed verdict because plaintiff Nicholas Braun failed to show that they owed him a duty of care. We agree. This Court reviews de novo the trial court's decision on a motion for a directed verdict. *Berryman v K mart Corp*, 193 Mich App 88, 91; 483 NW2d 642 (1992). This Court considers the evidence presented at trial in a light most favorable to the nonmoving party to determine whether the plaintiff established a prima facie case. *Id.* A directed verdict should be granted only if reasonable jurors could not reach different conclusions. *Id.*

The question presented is whether under the circumstances of this case a landlord who promulgates rules and regulations regarding tenants' dogs owes a third party a duty to use reasonable care to enforce those rules. Generally, the existence of a duty is a question of law for the court to decide, but where certain factual circumstances give rise to a duty, and there are disputed facts, a jury must determine whether those factual circumstances exist. *Howe v Detroit Free Press, Inc*, 219 Mich App 150, 156; 555 NW2d 738 (1996). "[T]he jury decides the question of duty only in the sense that it determines whether the

proofs establish the elements of a relationship which the court has already concluded give rise to a duty as a matter of law." *Smith v Allendale Mut Ins Co*, 410 Mich 685, 714-715; 303 NW2d 702 (1981). This Court has considered a landlord's duty to protect others from attacks by tenants' animals on two occasions, in *Szkodzinski v Griffin*, 171 Mich App 711; 431 NW2d 51 (1988), and *Feister v Bosack*, 198 Mich App 19; 497 NW2d 522 (1993).

In *Szkodzinski*, the plaintiff sought to recover from a landlord under a local ordinance, a strict liability theory, and the common law for injuries sustained when a tenant's dog attacked him. The plaintiff's local ordinance claim was rejected because the ordinance did not create a cause of action. The strict liability claim was rejected because the Michigan dog-bite statute, MCL 287.351; MSA 12.544, applies only to the dog's owner. The landlord was not an "owner" for purposes of the statute because he did not own, keep, or control the dog. *Szkodzinski, supra* at 714. Finally, this Court rejected the plaintiff's common-law claim because no factual question existed whether the landlord knew of the dog's vicious nature. The Court remarked that "the only possible way that [the landlord] could be held liable on a common law theory would be if he knew of the dog's vicious nature." *Id.* at 714.

In *Feister*, this Court considered the question whether a landlord could be held liable for injuries inflicted by a tenant's dog off the leased premises. The Court held that a landlord had no duty to protect third parties under those circumstances. The *Feister* Court declined to construe *Szkodzinski* as establishing a landlord's duty to protect all potential victims

from a dog once the landlord learns of the dog's dangerous proclivities. *Feister, supra* at 23. The Court noted that where the tenant comes into possession of the dog after the premises have been leased, courts in other jurisdictions have held a landlord liable only when he had knowledge of the dog's vicious propensities and had control of the premises or the capability to remove or confine the animal. The *Feister* Court further noted that other courts have been reluctant to impose liability for attacks that take place off the premises. After reviewing the decisions of other courts, this Court determined that a landlord's power to evict a tenant does not establish "control" over the dog, even if the landlord could have evicted the tenant before the date of the injury. *Id.* at 25-26. Accordingly, this Court held that a landlord owes "no duty to protect third parties from attacks by his tenants' dog taking place off the leased premises where the dog was acquired after the premises were leased." *Id.* at 26.

In this case, plaintiff Nicholas Braun admits that he, his parents, or the dog's owners, much less defendants, did not know of the dog's dangerous proclivities. Accordingly, Nicholas rightly concedes that he cannot recover under the common-law theory identified in *Szkodzinski, supra* at 714. See also *McCullough v Bozarth,* 232 Neb 714; 442 NW2d 201 (1989) (cases collected).[1] Nicholas instead argues that

---

[1] In *McCullough, supra* at 724-725, the Supreme Court of Nebraska succinctly summarized a landlord's common-law liability:

We hold that as a general rule, a landlord is liable for injuries caused by the attack of a tenant's dog only where the landlord had actual knowledge of the dangerous propensities of the dog and where the landlord, having that knowledge, nevertheless leased the

by promulgating rules and regulations governing their
tenants' possession of dogs, including breed and size
restrictions, defendants voluntarily assumed a duty to
use reasonable care to enforce their rules to protect
third parties from tenants' dogs that do not satisfy the
criteria. We reject Nicholas' argument.

Nicholas relies primarily on the Supreme Court of
Alaska's decision in *Alaskan Village, Inc v Smalley*,
720 P2d 945 (Alaska, 1986), to support his assertion
of a duty in this case. In *Alaskan Village*, the plaintiff,
a six-year-old child, was bitten by her neighbor's pit
bull while playing on a swingset in the neighbor's
yard. The plaintiff and her neighbor both lived in
defendant's mobile-home park. The defendant
inserted a comprehensive set of rules and regulations
in its standard lease agreement, including a prohibi-
tion on tenants possessing "vicious dogs." On appeal
from the judgment for plaintiff, the Alaska court held
that the defendant landlord had a duty to exercise
reasonable care to enforce its rules and regulations
because it undertook the obligation to control vicious
dogs in its trailer park. *Alaskan Village, supra* at 948.

The Alaska court noted that under § 323 of the Sec-
ond Restatement of Torts a defendant who under-
takes to render services owes a duty of care. The
court then reviewed seven analytical factors[2] to deter-

---

premises to the dog's owner or, by the terms of the lease, had the
power to control the harboring of a dog by the tenant and
neglected to exercise that power.

Thus, under the common-law theory, defendants' rules and regulations
would support a finding that they had the power to control their tenants'
harboring of dogs.

    [2] The seven factors that the Alaska court considered were: "(1) the
foreseeability of harm to plaintiff, (2) the degree of certainty that plaintiff
suffered injury, (3) the connection between defendant's conduct and

mine whether an actionable duty of care existed under the circumstances presented in *Alaskan Village*. The court determined that a duty existed, reasoning as follows:

> Applying these principles to the instant case, we conclude that Village had a duty to exercise reasonable care to enforce its rules and regulations. (1) There was ample evidence that Village had actual knowledge of prior incidents involving [the neighbor's] dogs, and therefore it was clearly foreseeable that a person such as Smalley might be harmed; (2) Smalley suffered injury; (3) her injuries are closely related to Village's failure to take any action to enforce its rules; (4) Village's blatant disregard of its tenants' safety is morally blameworthy; (5) our policy is to encourage owners to enforce their rules to prevent harm to others lawfully on the premises; (6) the burden on owners of enforcing their own rules is not onerous; and (7) owners may obtain insurance or require tenants who own vicious animals to do so.
>
> Village undertook to control pets on the trailer park premises by the lease provision prohibiting tenants from keeping vicious dogs and requiring [the neighbor] to immediately remove annoying pets. One of the trailer park managers agreed that he had "an obligation to enforce the rules . . . concerning pets for the safety and well-being of the tenants in that park." . . . Smalley was entitled to rely on Village to perform its duty. [*Alaskan Village, supra* at 948.]

This Court has similarly accepted § 324A of the Second Restatements of Torts as correctly stating the law regarding a duty arising out of the rendering of services. *Courtright v Design Irrigation, Inc,* 210

plaintiff's injury, (4) the moral blame attached to defendant's conduct, (5) the policy of preventing future harm, (6) the burden on the defendant and consequences to the community of imposing the duty, and (7) the availability, cost and prevalence of insurance for the risk." *Alaskan Village, supra* at 947-948.

Mich App 528, 531; 534 NW2d 181 (1995). That section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking. [2 Restatement Torts, 2d, § 324A, p 142.]

Nicholas correctly notes that defendants' failure to enforce their rules arguably falls within § 324A because their actions could have increased the risk of harm to him. This fact, however, does not answer the duty question. In considering § 324A, our Supreme Court explained the role of the Restatement in the duty analysis:

> [W]e note that the application of a common-law rule to a particular set of facts does not turn upon whether those facts can be characterized in the language of the Restatement section corresponding to the common-law rule. Unlike a statute, which expresses a legislative directive for the treatment of future cases, the Restatement seeks primarily to distill the teachings of decided cases and is descriptive. While its drafters may sometimes strive to choose "the better rule" or to predict or shape the development of the law, its influence depends upon its persuasiveness. Even where a particular Restatement section has received specific judicial endorsement, cases where that section is invoked must be decided by reference to the policies and precedents underlying the rule restated. Textual analysis of the Restate-

ment is useful only to the extent that it illuminates these fundamental considerations. [*Smith, supra* at 712-713.]

Duty is a question "whether the defendant is under any obligation for the benefit of the particular plaintiff and concerns the problem of the relationship between individuals that imposes upon one a legal obligation for the benefit of the other." *Premo v General Motors Corp*, 210 Mich App 121, 124; 533 NW2d 332 (1995). This Court's decision to impose a duty involves a determination of public policy. *Smith, supra* at 716, n 24. In making this determination, this Court considers many variables. *Buczkowski v McKay*, 441 Mich 96, 101; 490 NW2d 330 (1992). In *Buczkowski, supra* at 101, n 4, our Supreme Court cited Dean Prosser's description of these variables in Prosser & Keeton, Torts (5th ed), § 53, p 359, n 24:

> Dean Prosser described the several variables that consistently go to the heart of a court's determination of duty as including: foreseeability of harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and, finally, the burdens and consequences of imposing a duty and the resulting liability for breach.

Applying these principles, we conclude that defendants did not have a duty to exercise reasonable care to enforce its rules and regulations under the circumstances of this case. (1) Unlike in *Alaskan Village*, defendants did not know of the dog's dangerous proclivities, and therefore, it was no more foreseeable that plaintiff would be harmed by his neighbor's dog than any other dog; (2) Nicholas suffered injury; (3) Nicholas' injuries were related to defendants' failure

to enforce their rules and regulations only in the sense that if defendants had enforced them, the dog would not have been in the mobile-home park, because the dog violated defendants' size restrictions, not their prohibition of "dangerous breeds"; (4) defendants' failure to enforce the size restrictions does not demonstrate the blatant disregard of its tenants' safety exhibited in *Alaskan Village* because defendants did not know of the dog's dangerous nature and the size of a dog is not necessarily related to its propensity to bite; (5) our policy is to encourage owners to enforce their rules to prevent harm to others lawfully on the premises; and (6) the burden on the owners to enforce their regulations is not particularly onerous and they could insure against the risk of liability.

Upon consideration of these factors, we conclude that defendants did not owe Nicholas a duty of care in this case because they did not undertake to render services to another within the meaning of § 324A. Although the size restrictions may in some way protect others from harm, their purpose is primarily to protect against harm to the premises. The Maryland Court of Special Appeals' discussion of a "no pets" lease provision in this context is instructive in this regard:

> The landlords were not in breach of the "no pets" provision; the tenant was in breach. Clauses in lease contracts creating a duty on the part of tenant to the landlord, unless specifically designed to do so, do not create obligations on the part of landlords to third parties. Contract law provides that the beneficiary of a clause has no obligation to enforce the contract provision, but could waive the provision by his conduct. . . . In this case, the landlords, who were the beneficiaries of the "no pets" clause, had no duty to third parties

to enforce the rule. [*Amberwood Associates Ltd Partnership, Inc v Matthews*, 115 Md App 510, 521; 694 A2d 131 (1997), cert gtd 347 Md 155 (1997).]

Under the circumstances of this case, we conclude that defendants did not owe Nicholas a duty of care. Accordingly, the trial court erred in denying defendants' motion for a directed verdict. We therefore vacate the judgment in Docket No. 184796.[3]

DOCKET NOS. 190771 & 190956

Defendants argue that the trial court erred in denying their motion for mediation sanctions against plaintiffs Kathy, Thomas, and Bryan Braun. We disagree. This Court reviews de novo a trial court's decision whether to grant mediation sanctions. *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 129-131; 573 NW2d 61 (1997). Here, the trial court denied defendants' motion because they filed it more than twenty-eight days after the court entered judgment on Kathy, Thomas, and Bryan Braun's claims.

Defendants argue that the trial court erred in denying their motion because they timely filed it within twenty-eight days of the order denying their motion for judgment notwithstanding the verdict, a new trial, or remittitur. MCR 2.403(O)(8) establishes the period for filing a motion for mediation sanctions, stating as follows:

A request for costs under this subrule must be filed and served within 28 days after the entry of judgment or entry

---

[3] In light of our determination that defendants did not owe Nicholas a duty of care, we need not address defendants' other assertions of error.

of an order denying a timely motion for a new trial or to set aside the judgment.

This Court must apply the clear language of the court rule as written. *Great Lakes, supra* at 130. In unambiguous terms, MCR 2.403(O)(8) provides that the period for requesting costs begins on the date the court enters judgment or the date the court enters an order denying a timely motion for a new trial or to set aside the judgment. For purposes of the court rule, the *judgment* is the judgment adjudicating the rights and liabilities of particular parties, regardless of whether that judgment is the final judgment from which the parties may appeal. See MCR 2.604(A). The court rule includes a provision allowing twenty-eight days after the order disposing of a motion for a new trial or to set aside the judgment in which to request sanctions because these motions may affect whether a party is entitled to the sanctions. When these motions do not pertain to the parties involved in the request for sanctions, extending the period for filing a motion for sanctions would serve no purpose.

In this case, the trial court entered judgment for defendants on plaintiffs Kathy, Thomas, and Bryan Braun's claims on February 1, 1995, and judgment for plaintiff Nicholas Braun on February 6, 1995. Defendants' motions for a new trial, judgment notwithstanding the verdict, and remittitur were denied in an order entered March 16, 1995. However, those motions concerned only Nicholas' claims. Therefore, under MCR 2.403(O)(8), the twenty-eight day period for defendants to request mediation sanctions against Kathy, Thomas, and Bryan Braun commenced on February 1, 1995. Defendants filed their motion for mediation sanctions on April 6, 1995. Accordingly, the trial court

properly denied defendants' motion as untimely. We therefore affirm in Docket Nos. 190771 and 190956.

Affirmed in part and vacated in part.