*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHELLY K. SKIVER,

        Plaintiff-Appellee,

v

GREGORY DURGA,

        Defendant,

and

SILVER SHORES MHC, LLC,

        Defendant-Appellant.

UNPUBLISHED
October 13, 2022

Nos. 358830; 358931
Grand Traverse Circuit Court
LC No. 20-035420-NO

Before: MARKEY, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 358830, defendant Silver Shores MHC, LLC (Silver Shores) appeals the judgment entered after a jury trial finding Silver Shores liable for injuries that plaintiff suffered when she was attacked by a dog that was owned by Silver Shores's lessee, defendant Gregory Durga (Durga).[1] In Docket No. 358931, Silver Shores appeals the trial court's order awarding costs to plaintiff. These appeals were administratively consolidated by this Court.[2] We affirm in both dockets.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In July 2020, plaintiff filed suit against Durga and Silver Shores for injuries she suffered in May 2020 while she was walking her son's dog in a common area of the mobile home

---

[1] Durga is not a party to this appeal.

[2] *Skiver v Durga*, unpublished order of the Court of Appeals, entered November 29, 2021 (Docket Nos. 358830, 358931).

community operated by Silver Shores. Plaintiff, who was then approximately 61 years of age, alleged that she suffered a vertebral compression fracture and other injuries when Durga's pit bull, Emma, broke free from her restraint and attacked plaintiff (and the dog she was walking) as they walked by Durga's home. Plaintiff asserted that Durga had negligently kept Emma and was responsible for plaintiff's injuries. Plaintiff also asserted that Silver Shores was responsible for her injuries as the proprietor of the mobile home community. More specifically, plaintiff alleged that Silver Shores could be held liable under ordinary negligence and premises liability theories for failing to take any steps to enforce its own rules governing pets.

Plaintiff presented evidence at trial that the previous community manager for Silver Shores, Yvonne Stieve, knew that Durga kept Emma on the premises, even though he had not registered her with Silver Shores, and despite the fact that Silver Shores did not permit pit bulls. Plaintiff presented evidence from several witnesses who testified that Emma had, on more than one occasion, escaped from Durga's home and run loose in the mobile home park. One resident, Joshua Austin, testified that on one occasion Emma had cornered him in his shed and scared him. Austin stated that he thought that Emma was going to attack him, so he grabbed a piece of lumber to defend himself. He stated that he reported the incident to Stieve.

Deputy Matthew Karczewski testified regarding an incident in which he and two other officers responded to Silver Shores after receiving a report that a pit bull was aggressively chasing park residents. He testified that the officers chased Emma, but were unable to subdue her even after an officer sprayed her with pepper spray. The evidence suggested that Stieve was aware of that incident and helped contact Durga's son Kyle, who then got Emma under control.

The former field manager for the Silver Shores mobile home park, Tim Edgar, also testified that he was generally aware that Durga kept Emma. He told the jury that Emma had escaped several times. He was aware that several residents had complained about Emma to Silver Shores.

Silver Shores's current manager, Amy Miller, testified in defense of Silver Shores. She stated that she was unaware of Emma until the incident at issue, and that she commenced eviction proceedings against Durga after the incident. Durga also testified at trial and stated that he kept Emma despite being told by Silver Shores staff that he could not do so and that he hid Emma from Silver Shores staff.

After hearing all the evidence, the jury rejected Silver Shores's contention that it had no actual or constructive knowledge that Emma was on the premises and that it therefore was not responsible for plaintiff's injuries. The jury found that Durga and Silver Shores were both negligent and that their negligence had proximately caused plaintiff's injuries; it also found that plaintiff was not negligent. It then apportioned 40% of the fault to Durga and 60% of the fault to Silver Shores. The jury found that plaintiff had suffered $75,000 in past economic damages and would suffer $40,000 of economic damages each year for the next five years for a total of $200,000 in future economic damages. The jury found that plaintiff had suffered $37,500 in past noneconomic damages and would suffer $18,000 in future noneconomic damages for the next 23 years for a total of $414,000 in future noneconomic damages.

The trial court entered a judgment in plaintiff's favor in September 2021. The judgment awarded Plaintiff $290,600 against Durga, and $435,900 against Silver Shores. The trial court

also entered an order awarding plaintiff more than $7,200 in costs. The order provided that Durga and Silver Shores were jointly and severally liable for the costs.

These appeals followed.

## II. DENIAL OF MOTION FOR SUMMARY DISPOSITION

Silver Shores argues that the trial court erred by denying its motion for summary disposition. We disagree.

## A. ISSUE PRESERVATION

As a threshold issue, we note that several of the arguments Silver Shores makes on appeal were not made before the trial court. To preserve an issue for appellate review, the party asserting the claim of error generally must establish that the issue was raised in the trial court. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). In its motion for summary disposition, Silver Shores argued that the trial court should dismiss plaintiff's common-law negligence claim because it had no knowledge that Emma was vicious or had any dangerous propensities—indeed, it argued that it did not know that Emma existed at all. It similarly argued that it could not be liable under a premises liability theory for the same reasons. Finally, it argued that plaintiff was not a party to the lease and that the duty arising under MCL 554.139 therefore did not apply to her.

However, Silver Shores did not argue before the trial court—as it now argues on appeal--that plaintiff had to prove that Silver Shores knew that Emma was vicious—as opposed to merely dangerous—and did not argue that a "should have known" standard did not apply. It also did not argue that plaintiff had to show that Silver Shores had knowledge about Emma closer in time to the date of the incident at issue. Silver Shores also did not argue that the trial court should disregard this Court's decision in *Klimek v Drzewiecki*, 135 Mich App 115; 352 NW2d 361 (1984),[3] and conclude that an animal cannot be a condition on the land.

Accordingly, three of Silver Shores's claims of error regarding the trial court's denial of its motion were not, in fact, raised in that motion. Moreover, although Silver Shores did raise the issue of notice in its motion, it did not argue that the requisite notice had to be notice of viciousness. Similarly, Silver Shores tangentially noted that it did not own or possess Emma when discussing the common-law duty involving animals, but it did not state that the common-law action could only apply to persons who owned or possessed the animal. These issues were therefore only partially preserved. The only issue that was fully preserved was whether plaintiff had a contractual relationship with Silver Shores that implicated MCL 554.139.

---

[3] This Court is not required to follow a decision by this Court published before November 1, 1990. See MCR 7.215(J)(1). However, decisions published before November 1, 1990, are binding under traditional principles of stare decisis, and ought to be carefully considered. See MCR 7.215(C)(2); *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

In a civil case, when a party fails to preserve an issue for appellate review by raising it in the trial court, this Court generally treats such failure as a waiver. See *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 344-345, 345 n 5; 852 NW2d 180 (2014), vacated in part on other grounds 497 Mich 927 (2014). Although this Court has the discretion to review unpreserved claims of error, our Supreme Court has cautioned that this Court must do so only sparingly and only to prevent a miscarriage of justice. See *Napier v Jacobs*, 429 Mich 222, 233-234; 414 NW2d 862 (1987). An erroneous jury verdict that results in an award of damages does not constitute a miscarriage of justice that would warrant the exercise of this Court's discretion to review an unpreserved claim. *Id.* (stating that the loss of a favorable jury verdict does not amount to a manifest injustice, even though it cost the appellant $60,000). Given our Supreme Court's guidance, we decline to consider Silver Shores's unpreserved arguments as a ground for reversing the trial court's decision on the motion for summary disposition.

Notwithstanding its failure to preserve several of these arguments, Silver Shores suggests that this Court can consider these arguments because this Court's standard of review is de novo. But our Supreme Court has stated that courts are not the research assistants of the litigants; rather, it is the duty of the parties to present fully their legal arguments to the court for resolution. *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008). And although this Court reviews de novo a trial court's decision on a motion for summary disposition, see *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009), this Court's authority to review such motions is circumscribed. This Court must review the motion in the same manner as it was presented to the trial court. See *Jackhill Oil Co v Powell Prod, Inc*, 210 Mich App 114, 117; 532 NW2d 866 (1995). This Court is not at liberty to expand the record to include evidence and arguments that were never presented to the trial court. See *Barnard Mfg*, 285 Mich App at 380-381. Indeed, as our Supreme Court has stated, "there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right." *Napier*, 429 Mich at 228-229 (quotation marks and citation omitted). Accordingly, we reject Silver Shores's attempt to expand our review of its motion for summary disposition to include arguments and evidence not raised before the trial court.

## B. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. See *Barnard Mfg*, 285 Mich App at 369. We also review de novo whether the trial court properly interpreted and applied the relevant statutes, see *In re Carroll (On Remand)*, 300 Mich App 152, 159; 832 NW2d 276 (2013), and properly applied this state's common law, *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015).

## C. ANALYSIS

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. The moving party has the initial burden to identify the issues about which it claims there is no genuine issue of material fact. See MCR 2.116(G)(4). The moving party must sufficiently identify the issues that it claims are undisputed to put the nonmoving party on notice of the need to respond. See *Barnard Mfg*, 285 Mich App at 369. The moving party must also support the motion with "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion." MCR 2.116(G)(3). "If the moving party fails to

properly support its motion for summary disposition, the nonmoving party has no duty to respond and the trial court should deny the motion." *Barnard Mfg*, 285 Mich App at 370. If the moving party sufficiently identifies issues about which it claims there are no genuine issues of material fact and identifies evidence in support of that assertion, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

### 1. ORDINARY NEGLIGENCE

Silver Shores argues that the trial court erred by failing to dismiss plaintiff's ordinary negligence claim. We disagree. Silver Shores argued before the trial court that there was no evidence that it had any notice that Durga kept Emma on his property or that it knew that Emma was vicious or had any dangerous propensities. Silver Shores also noted in passing that it was not Emma's owner or possessor. Silver Shores asked the trial court to dismiss plaintiff's claims for these reasons alone.

Our Supreme Court has recognized that the possessor of a domestic animal can be held strictly liable for harms caused by a domestic animal that the possessor knows, or has reason to know, has dangerous propensities that are abnormal for its class. See *Trager v Thor*, 445 Mich 95, 99; 516 NW2d 69 (1994). Once the possessor knows or has reason to know that his or her animal is abnormally dangerous for its class, the law imposes strict liability simply because the possessor chose to keep the animal and expose the public to the danger posed by that animal. *Id*. at 100-101; see also *Hiner v Mojica*, 271 Mich App 604, 611-612; 722 NW2d 914 (2006) (stating that there must be evidence that the dog was abnormally dangerous to warrant the imposition of strict liability). The term "possessor" encompasses both owners and keepers of the animal. *Trager*, 445 Mich at 100.

In an older decision, this Court indeed held that the owner or keeper of an animal can only be liable if the owner or keeper knew that the animal was vicious. See *Szkodzinski v Griffin*, 171 Mich App 711, 714; 431 NW2d 51 (1988). However, after that decision, our Supreme Court clarified that the heightened knowledge standard applied only to strict liability under the common law. See *Trager*, 445 Mich at 100-101. The Supreme Court went on to hold that, even if the keeper of an animal does not have knowledge that the animal is abnormally dangerous for its class, the keeper can still be liable for harms caused by the animal under ordinary principles of negligence. *Id*. at 104.[4] An animal's keeper, the Court explained, is liable to another for harms caused by his or her failure to effectively control the animal:

> [A] negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries

---

[4] In *Hiner*, 271 Mich App at 609-614, this Court recognized the distinction between the heightened notice requirements for the imposition of liability without fault and the notice requirements applicable for a claim involving ordinary negligence.

that could have been reasonably foreseen. [*Id*. at 106 (quotation marks and citation omitted).]

In this case, plaintiff did not allege a claim involving strict liability against Silver Shores. Rather, she alleged an ordinary negligence claim, premised on Silver Shores's failure to enforce its own rules and regulations involving dogs, as well as premises liability. Therefore, contrary to Silver Shores's argument, plaintiff did not have to present any evidence that Emma was vicious or had dangerous propensities beyond that which were typical for dogs as a class, and she did not have to show that Silver Shores was Emma's owner or keeper within the meaning of the common law claim for strict liability involving animals, in order to survive summary disposition. See *id*. at 99-104.

Silver Shores also cursorily argued before the trial court that it had no duty under ordinary principles of negligence because it did not "possess" Emma. Our Supreme Court has held that a person who possesses or harbors a domestic animal can be liable for negligently failing to control the animal. See *id*. at 104, citing 3 Restatement Torts, 2d, § 518. But that is not the only common-law theory involving ordinary negligence under which a person may be held liable to the harms inflicted by an animal.

In this case, plaintiff alleged, regarding her ordinary negligence claim, that Silver Shores knew about Emma; knew or should have known that Emma had dangerous propensities; allowed Durga to keep Emma in violation of Silver Shores's own rules and regulations, which were intended to protect the residents of Silver Shores's mobile home community; and that Silver Shores's negligent failure to enforce its own rules and regulations proximately caused plaintiff's injuries. This Court has recognized that, under certain circumstances, a landlord can be held liable for the negligent failure to enforce its own rules and regulations involving animals on leased premises. See , e.g., *Braun v York Props, Inc*, 230 Mich App 138, 144-146; 583 NW2d 503 (1998), citing 2 Restatement Torts, 2d, §§ 323 and 324A.

In *Braun*, this Court recognized several factors that should be considered before finding a common-law duty to enforce the rules and regulations regarding animals. This includes whether the landlord had knowledge that the animal had dangerous propensities that made injury foreseeable, whether the injuries were closely related to the failure to enforce the rules, and whether the failure to enforce the rules was morally blameworthy because it demonstrated a blatant disregard for safety. See *Braun*, 230 Mich App at 147-148. Although this Court in *Braun* ultimately held that the landlord in that case did not owe a duty to enforce its rules and regulations, the facts of this case are significantly different and could support the imposition of a common law duty to enforce the rules and regulations.

As stated, in objecting to plaintiff's motion, Silver Shores did not specifically challenge plaintiff's allegations regarding its failure to enforce its own regulations. By failing to challenge this claim in the trial court, Silver Shores waived any claim that the trial court should have determined that Silver Shores did not owe a duty to enforce its rules and regulations. See *Walters*, 481 Mich at 388. Additionally, because the duty alleged to have been violated—as stated in plaintiff's common-law negligence claim--did not involve possession of the animal, the trial court did not err by refusing to dismiss plaintiff's claim because she failed to establish that Silver Shores possessed Emma. Although plaintiff did not have to establish that Silver Shores knew that Emma

was vicious or that it had possession of Emma to establish its ordinary negligence claim, plaintiff did have to present evidence that Silver Shores knew about Emma before she could establish that Silver Shores breached its duty to enforce its rules and regulations governing dogs. Plaintiff also had to present evidence concerning Silver Shores's knowledge of Emma's past behaviors because that evidence was highly relevant to determining whether Silver Shores breached the applicable standard of care. See *Trager*, 445 Mich at 105 (stating that knowledge of the animal's dangerous propensities, if any, is an important factor in determining whether there was negligence); *Braun*, 230 Mich App at 147-148 (stating that the foreseeability of the harm is a key factor in determining whether to impose a duty to enforce rules governing pets).

In this case, plaintiff presented evidence that Silver Shores's manager, Stieve, saw Emma when she first inspected Durga's trailer before he moved it into Silver Shores, and that she told him then that he could not have Emma in Silver Shores. It was also undisputed that although Stieve told Durga that he could not keep Emma in Silver Shores, Durga did so anyway, and he testified that Stieve "knew down the road that I had Emma" at Silver Shores.

Plaintiff also submitted Edgar's affidavit, in which he averred that he worked as Silver Shores's field manager until 2018. Edgar's affidavit stated that Durga had been told that he could not have Emma on the property many times and stated as well that there were multiple complaints to Silver Shores about Emma running loose.

Austin also testified that Durga had a pit bull that once "[s]cared the crap out of [him]." He testified that Durga's pit bull had cornered him in his shed and that he thought the pit bull was going to attack him. He also testified to reporting the incident to Stieve's son. Austin did not know whose dog it was at the time, but stated that it was the same dog that police officers chased in 2017. Plaintiff presented evidence that police officers responded to an incident in 2017 involving Emma cornering a Silver Shores resident and chasing other residents.

Plaintiff's evidence was sufficient to raise a genuine issue of material fact concerning whether Silver Shores knew about Emma, knew that she had a propensity to get loose, and knew that she was dangerous. A jury could find that Stieve and Edgar were the agents charged with reporting and handling complaints of this nature and could impute their knowledge to Silver Shores. See *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 214; 476 NW2d 392 (1991). The jury could further infer that Emma posed a particular hazard to the community by running loose, charging residents, scaring residents, and otherwise sowing chaos in the common areas. The evidence permitted an inference that Emma had a propensity to break loose, run free, and run after persons in Silver Shores. The evidence also permitted an inference that Emma was aggressive to humans she encountered while loose. Examining the evidence as a whole, there was a question of fact whether Silver Shores had enough information about Emma and her propensities that it knew or should have known that she might harm a resident or cause a serious accident. That evidence in turn established a question of fact as to whether Silver Shores properly responded to the danger when it chose not to enforce its own rules and regulations or otherwise take steps to protect its residents.

Silver Shores also suggests for the first time on appeal that plaintiff's evidence that it had notice about Emma's existence and propensities in 2018 did not establish a question of fact that Silver Shores had notice in 2020. The evidence that plaintiff presented showed that Silver Shores

had repeated notice through at least 2018 that Emma broke loose and menaced the residents of Silver Shores. The evidence that Emma repeatedly escaped was evidence that the hazard that she posed had existed for such a length of time that, at least for purposes of premises liability law, Silver Shores should have known about her. See *Clark v Kmart Corp*, 465 Mich 416, 419; 634 NW2d 347 (2001). The evidence also showed that the problem had persisted for years and was likely to persist without intervention by Silver Shores. Although Silver Shores had no duty to inspect Durga's home to determine whether he was harboring a dangerous animal, see *Feister v Bosack*, 198 Mich App 19, 26; 497 NW2d 522 (1993), it could not ignore the evidence that Durga was in fact doing so in the hope that the problem would rectify itself. A reasonable jury could infer that Silver Shores continued to be aware of the problem even after Miller took over management of Silver Shores and still took no steps to enforce its own rules or otherwise take reasonable steps to rectify the danger. Once plaintiff presented evidence from which a reasonable jury could make these inferences, whether to make the inferences and what weight to assign to them became a matter for the jury to decide. See, e.g., *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) ("It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences."). In other words, although Silver Shores might argue to a jury that plaintiff's evidence was stale and should not be relied upon to establish notice, that argument does not establish as a matter of law that there was no genuine issue of material fact.

Plaintiff met her burden to demonstrate that there were genuine issues of material of fact on the issues of notice and propensity. See *Quinto*, 451 Mich at 362. Additionally, because possession of the dog was not an element of plaintiff's ordinary negligence claim, the trial court did not err when it refused to dismiss plaintiff's ordinary negligence claim on that basis. Therefore, the trial court properly denied Silver Shores's motion to dismiss plaintiffs' ordinary negligence claim.

## 2. PREMISES LIABILITY

Silver Shores made similar arguments regarding notice in its motion for summary disposition with respect to plaintiff's premises liability claim. It again argued that, absent evidence that it knew about Emma and her dangerous propensities, plaintiff could not establish her premises liability claim. We disagree.

This Court has held that a "loose, unsupervised and dangerous dog" can constitute a condition on the land for purposes of premises liability. See *Klimek*, 135 Mich App at 119.[5] Under ordinary principles of premises liability, the premises possessor for the common areas—Silver Shores—had to have had notice of the dangerous condition on its land. See *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016) (recognizing that a premises possessor cannot be liable for a dangerous condition on land unless there is evidence that the premises possessor

---

[5] Silver Shores asks this Court to disregard the decision in *Klimek* and hold that a dangerous dog does not constitute a condition on the land. Whatever the merits of that argument, the trial court was not free to disregard that decision. See *In re Hague*, 412 Mich 532, 552; 315 NW2d 524 (1982). Consequently, the trial court did not err by holding that a dangerous dog can constitute a condition on the land for purposes or premises liability.

knew or should have known of the dangerous condition). It was undisputed that plaintiff suffered her injury while using a road within Silver Shores, which was a common area that Silver Shores possessed and controlled; accordingly, Silver Shores had a duty to its invitees to ensure that the road was reasonably safe for use. See *Bailey v Schaaf*, 494 Mich 595, 604-606; 835 NW2d 413 (2013). And Silver Shores could be liable for transient hazards if it had notice that there was an unreasonable risk of harm from such hazards. See *Samson v Saginaw Prof Bldg, Inc*, 393 Mich 393, 406-409; 224 NW2d 843 (1975) (stating that there was evidence that the landlord knew about the danger that an insane person might run amok in its common areas, so it was for the jury to determine whether the landlord took reasonable steps to protect its invitees from the potential for harm); *Klimek*, 135 Mich App at 119 (holding that a dangerous dog that is loose on the property or near the property can constitute a dangerous condition on the land).

As already discussed, plaintiff presented evidence that permitted an inference that Silver Shores knew about Emma, knew that Emma had a dangerous propensity to escape and run loose, and knew that she posed a danger to residents when running loose. Accordingly, there was evidence that Silver Shores had notice of Emma as a dangerous dog that constituted a condition that affected the common areas under Silver Shores's control. See *Samson*, 393 Mich 393, 406-409; *Klimek*, 135 Mich App at 119. Therefore, the trial court did not err by denying Silver Shores's motion for summary disposition of plaintiff's premises liability claim on that basis. See *Quinto*, 451 Mich at 362.

### 3. STATUTORY DUTY

Silver Shores also argued that MCL 554.139 did not apply to the facts of its case because there was no evidence that plaintiff was anything other than a social guest and the statute did not apply to social guests. The trial court concluded that there was evidence to support the application of that statute to plaintiff. We agree with the trial court.

In MCL 554.139(1), the Legislature provided that "every lease or license of residential premises" includes, in relevant part, a covenant to keep the common areas fit for the use intended by the parties. Our Supreme Court has recognized that the covenant imposed under MCL 554.139 is contractual and gives rise to contract remedies. See *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425-426, 431; 751 NW2d 8 (2008). By its plain terms, the statute applies to two distinct types of contracts: leases and licenses. See MCL 554.139. In the real property context, a license is an express or implied grant of permission by the owner or person in control of property to another allowing him or her to use real property. See *Alvin v Simpson*, 195 Mich App 418, 420; 491 NW2d 604 (1992).

In response to Silver Shores's motion for summary disposition, plaintiff presented evidence that she had filled out an application for residency with Silver Shores. By the terms of her son's lease agreement, plaintiff had to register with Silver Shores and had to pay a background check fee. She additionally had to agree to the terms and conditions applicable to lessees and had to agree to abide by Silver Shores's rules and regulations.

A reasonable jury, examining the totality of the evidence, could find that Silver Shores gave plaintiff an express license to use its property with the application, even though she was not a party to her son's lease. See *McCastle v Scanlon*, 337 Mich 122, 133-134; 59 NW2d 114 (1953)

(discussing the nature and elements of a license and stating that the license generally continues until revoked). The Legislature has provided that such a license must include the covenant applicable to common areas. See MCL 554.139(1)(a). Accordingly, there was—at the very least—a question of fact as to whether Silver Shores had granted a license to remain in Silver Shores as a resident. If the jury found that there was a license, that license would include the covenant provided under MCL 554.139(1). The trial court did not err by denying Silver Shores's motion for summary disposition as to any claim involving a breach of the covenant stated under MCL 554.139(1).

Because plaintiff established that there were genuine issues of material of fact that had to be submitted to a jury on each of her claims, the trial court did not err when it denied Silver Shores's motion for summary disposition. *Barnard Mfg*, 285 Mich App at 369.

## III. DIRECTED VERDICT

### A. PRESERVATION

Silver Shores also argues that the trial court should have granted its motion for a directed verdict after the close of plaintiff's proofs for the exact same reasons that it should have granted Silver Shores's motion for summary disposition. In its motion for a directed verdict, Silver Shores argued that there was "no evidence" that Silver Shores had any notice that Emma was dangerous to residents; rather, at best, there was some evidence that Stieve told Durga that he could not have a pit bull in Silver Shores and that Durga kept the dog and hid it from Silver Shores's staff. Silver Shores also argued that there was no evidence that Emma posed a danger to anyone. Silver Shores did not assert any other bases for granting a motion for a directed verdict. Therefore, any claims of error beyond the issue of notice are unpreserved, and we decline to consider them. See *Glasker-Davis*, 333 Mich App at 227; see also MCR 2.516 (stating that the moving party must identify the specific grounds that warrant the directed verdict in its motion).

### B. ANALYSIS

This Court reviews de novo a trial court's decision with regard to both a motion for a directed verdict and a motion for JNOV. Motions for a directed verdict or JNOV are essentially challenges to the sufficiency of the evidence in support of a jury verdict in a civil case. This Court reviews challenges to the sufficiency of the evidence in the same way for both motions: we review the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted. If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury. [*Taylor v Kent Radiology*, PC, 286 Mich App 490, 499-500; 780 NW2d 900 (2009) (quotation marks and citations omitted).]

As noted, in order to establish her claims for ordinary negligence and premises liability, plaintiff had to present evidence that Silver Shores knew about Emma and knew that Emma had dangerous propensities that posed an unreasonable risk to Silver Shores's residents. See *Lowrey*,

500 Mich at 8; *Trager*, 445 Mich at 105; *Braun*, 230 Mich App at 147-148. The trial court denied the directed-verdict motion after summarizing the evidence from which a reasonable jury could find that Silver Shores had the requisite notice, as we have already discussed. This evidence was sufficient to allow a reasonable jury to conclude that Silver Shores had knowledge of Emma and notice that she was dangerous. See *Clark*, 465 Mich at 419; see also *Hardiman*, 466 Mich at 428.

Moreover, plaintiff also presented direct evidence that Silver Shores's staff knew about Emma and recognized the danger that she posed. Edgar testified that he saw Emma loose in the complex before and knew that she belonged to Durga. He also stated that he was sure that there had been resident complaints about Emma during his tenure. Austin testified that he was one of the residents who made a complaint. He described for the jury the incident when Emma cornered him and he felt so threatened that he grabbed a piece of wood to defend himself. He stated that he reported the incident. Officer Karczewski testified about the incident when he and two other officers responded to Silver Shores after a resident complained about an aggressive pit bull running loose in Silver Shores. Durga's son testified that Stieve was the person who called Durga and told Durga to call Kyle to get Emma, which was indirect evidence that Silver Shores's staff knew about Emma, knew who owned her, and knew that Kyle would be able to stop Emma from running loose.

Because plaintiff had presented sufficient evidence to allow reasonable minds to reach differing conclusions on the issue of notice, the trial court did not err by denying the motion for a directed verdict. See *Taylor*, 286 Mich App at 499-500.

## IV. INSTRUCTIONAL ERROR

Silver Shores also argues that the trial court erred when it instructed the jury that it could infer that Silver Shores was negligent if it found that Silver Shores had violated the covenant required under MCL 554.139. We disagree.

Silver Shores objected to the requested instruction on the ground that there was no evidence that plaintiff was entitled to the protection afforded under MCL 554.139. It did not offer any other basis for objecting to the instruction and did not suggest an alternate instruction. An objection on one ground does not preserve a claim of error concerning a different ground for denying the requested instruction. See *Westland v Okopski*, 208 Mich App 66, 72; 527 NW2d 780 (1994). Therefore, Silver Shores did not preserve any claims of error involving the trial court's decision to allow the instruction other than the claim that plaintiff was not among the class of persons benefited under the statute. See *id*.

This Court reviews de novo whether the trial court properly instructed the jury. See *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000).

## B. ANALYSIS

Our Supreme Court has set forth the standard for reviewing claims of instructional error:

> [W]e examine the jury instructions as a whole to determine whether there is error requiring reversal. The instructions should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them. Instructions must not be extracted piecemeal to establish

-11-

error. Even if somewhat imperfect, instructions do not create error requiring reversal if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury. We will only reverse for instructional error where failure to do so would be inconsistent with substantial justice. [*Id*. at 6 (citations omitted).]

On the last day of trial, the trial court determined that there was sufficient evidence to support a finding that plaintiff was among the class of persons protected by MCL 554.139. For that reason, it provided the standard "statutory instruction" with a modification that provided that the landlord had to have known about the hazard or should have known about the hazard in order to permit the inference.

We have a state statute that provides one, in every lease or license of residential premises, the lessor or licens[or] covenants, A, that the premises and all common areas are fit for use intended by the parties. You may find—if you find— if you find the Defendant Silver Shores mobile home—Mobile Home Community, LLC, knew or should have known about the dangerous condition on its premise and violated this statute before or at any time—or at the time of the occurrence, you may infer the defendant was negligent.

Evidence that someone violated a civil statute, ordinance, rule, or regulation can constitute evidence of negligence. See *Johnson v Bobbie's Party Store*, 189 Mich App 652, 661; 473 NW2d 796 (1991). An instruction on the inference of negligence is appropriate when the harm suffered was among the class of harms that the rule or regulation was intended to prevent. See *Beals v Walker*, 416 Mich 469, 705; 331 NW2d 700 (1982).

Although the Legislature structured the statute at issue so as to compel landlords to include a covenant of fitness with all leases and licenses for real property, the statute nevertheless demonstrates a clear intent to prevent harms caused by the lease or license of real property in a condition not fit for the intended use. See MCL 554.139(1)(a). Additionally, as already discussed, there was evidence from which a reasonable jury could find that plaintiff was a licensee, which would place her among the class of persons protected by the statute. On this record, the trial court did not err when it instructed the jury on the possible inference of negligence for a violation of the covenant of fitness. See *Case*, 463 Mich at 6.

## V. APPORTIONMENT OF COSTS

Silver Shores also argues that the trial court erred when it refused to apportion the award of costs between it and Durga. This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules. *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019). This Court reviews for an abuse of discretion a trial court's decision to award costs. See *Guerrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. See *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). A trial court necessarily abuses its discretion when it premises its decision on a mistake of law. *Id*. To the extent that the trial court made findings of fact involving its application of the court rules or statutes, this Court reviews those findings for clear error. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*,

281 Mich App 364, 387; 761 NW2d 353 (2008). A trial court's findings are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. *Id.*

The Legislature has authorized our Supreme Court to regulate the taxation of costs except as "otherwise provided by statute." MCL 600.2401. Our Supreme Court has stated that costs "will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." MCR 2.625(1). The Supreme Court gave trial courts the option to deny an award of expenses that constitute costs, if the court provides its reasons for denying the award in writing. Accordingly, trial courts have the discretion to disallow costs. Nevertheless, because the Supreme Court indicated that the costs "will be allowed," MCR 2.625(1), if the prevailing party demonstrates that an expense is a cost, the burden is on the trial court to justify its decision to refuse to award that cost. See *Blue Cross and Blue Shield of Mich v Eaton Rapids Comm Hosp*, 221 Mich App 301, 308; 561 NW2d 488 (1997). This Court has held that the power to disallow costs includes the power to apportion costs among the parties against whom the judgment was entered. See *id*. Consequently, the trial court had the authority to order Silver Shores and Durga to be jointly and severally liable for the costs.

At the hearing on the objection to the costs that plaintiff requested, counsel for Silver Shores agreed that plaintiff had adequately supported her request for costs. The trial court then inquired whether there was any remaining dispute for it to address. Counsel for Silver Shores stated: "So I guess what I was looking for guidance from the Court on, Your Honor, is how the costs are to be, I guess, paid up between my client Silver Shores as well as Mr. Durga, the Co-Defendant." When the trial court asked why the award of costs should not be joint and several, counsel for Silver Shores related that, if that were the "Court's order, then obviously we will live with that." Counsel did not offer any other argument concerning the apportioning the costs. The court then explained that it was going to exercise its discretion to order the award the costs jointly and severally:

> I haven't seen any research or briefs on the issue and I have resisted the temptation to spend my weekend looking this up because it apparently is not very important, and so what I'm going to do—and the point now being you're telling me you agree with it. So what I'm going to do is assess those damages costs joint and several.

The trial court had the discretion to order the costs to be joint and several against both defendants. See *id*.; MCR 2.625(1). Moreover, it identified a cogent reason for exercising its discretion to do so. On this record, Silver Shores has not shown that the trial court's decision fell outside the range of reasonable and principled outcomes. *Elher*, 499 Mich at 21.

## VI. CONCLUSION

Silver Shores has not identified any errors that warrant a new trial or any other relief in either docket. Affirmed in both dockets. As the prevailing party, plaintiff is entitled to her costs in both appeals. See MCR 7.219(A).

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Mark T. Boonstra